IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| American Safety Casualty Insurance Company and Scottsdale Insurance Company, | ) ) ) ) Case No. 07 C 1990 |
| Plaintiffs, | ) ) |
| v. | ) Judge Virginia M. Kendall ) |
| City of Waukegan, | ) ) |
| Defendant. | ) ) ) |

# MEMORANDUM OPINION AND ORDER

Both Scottsdale Insurance Company ("Scottsdale") and American Safety Casualty Insurance Company ("American Safety") filed Complaints for Declaratory Judgment against the City of Waukegan ("Waukegan") on January 8, 2007 and April 11, 2007, respectively, seeking declarations that they did not owe coverage to Waukegan for its loss stemming from the lawsuit *S. Alejandro Dominguez v. Paul Hendley et. al.*, No. 04 C 2907 (the "*Domiguez* case"). Scottsdale's Complaint sought a declaration that it did not owe coverage under three Comprehensive Law Enforcement Policies it issued to Waukegan that covered the time period from November 1988 through November 1991. This Court consolidated the two cases on January 3, 2008. Thereafter, on March 20, 2008 Waukegan joined Interstate Indemnity Company, Lloyds of London, Northman Insurance Companies, Corgis Insurance Organizations, Evanston Insurance Company, Domiguez, and Paul Hendley as Counter-Defendants. On May 19, 2008, far ahead of this Court's dispositive motion schedule, Scottsdale filed a Motion for Summary Judgement, and it thereafter filed a Motion to Strike the City of Waukegan's Affidavits and Supporting Documents to the City's Statement of

Additional Facts Pursuant to Rule 37, and to Strike Improper Argument and Conclusions in the City's Statement of Additional Facts. For the reasons stated below, this Court grants Scottsdale's Motion for Summary Judgment and grants in part and denies in part Scottsdale's Motion to Strike.

## STATEMENT OF FACTS

Scottsdale issued three comprehensive Law Enforcement Liability policies to the City of Waukegan Police Department: Number PL 811010, effective from November 1, 1988 to November 1, 1989; Number PL 911489, effective from November 1, 1989 to November 1, 1990; and Number PL 111427, effective from November 1, 1990 to November 1, 1991. Scottsdale 56.1 at 5-7.[1] Each of these policies had a one million dollar limit for each person and each occurrence, and Waukegan was an additional insured on the policies. *Id*. Each of the policies contained the following "Insuring Agreement":

> The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:
>
> A) PERSONAL INJURY
>
> B) BODILY INJURY
>
> C) PROPERTY DAMAGE
>
> caused by an OCCURRENCE and arising out the performance of the INSURED'S duties to provide law enforcement and/or other departmentally approved activities as declared in the Application, or arising out of the ownership, maintenance or use of the premises designated in the Declarations (including the ways immediately adjoining such premises on land), and all other operations necessary and incidental thereto.

---

[1] The Court refers to Scottsdale's Rule 56.1 Statement of Material Facts as "Scottsdale 56.1" and Waukegan's Rule 56.1 Statement of Additional Material Facts as "Waukegan 56.1."

Waukegan 56.1 at 2. Each of the policies also contained the following provision:

> 4. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT
>
> (a) In the event of an occurrence, written notice containing the particulars sufficient to identify the INSURED and also to reasonably obtain information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the INSURED to the Company or any of its authorized agents as soon as practicable.
>
> (b) If a claim is made or a suit is brought against the INSURED, the INSURED shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Scottsdale 56.1 at 8.

S. Alejandro Domiguez ("Domiguez") filed suit against Waukegan and several of its police officers in the Northern District of Illinois on April 23, 2004, alleging claims of false arrest (Count I), malicious prosecution (Count II), and deprivation of constitutional rights (Count III) under 42 U.S.C. § 1983. *Id*. 56.1 at 9, 11. Domiguez amended his Complaint on August 2, 2004 to add state law claims for malicious prosecution (Count IV), intentional infliction of emotional distress (Count V), and a claim for indemnification (Count VII). *Id*. at 12. Specifically, Domiguez alleged that he was arrested by Waukegan police officers on September 21, 1989 and charged with two counts of aggravated sexual assault and one count of home invasion arising from an incident on September 19, 1989. *Id*. at 10. He was convicted of home invasion and aggravated sexual assault and sent to prison. *Id*. Years later, however, a post-conviction DNA test excluded him as the rapist, and on April 26, 2002, his convictions were vacated and he was found not guilty. *Id*.

The Waukegan Police Department received a "Notice of Lawsuit and Request for Waiver of Service of Summons" related to the *Domiguez* case on May 28, 2004 with a return date for the City's Answer of July 28, 2004. *Id*. at 13; Waukegan 56.1 at 5. Linda Ford ("Ford"), Waukegan's benefits administrator, received a copy of Domiguez's Complaint in June of 2004. Waukegan 56.1 at 6. Ford searched for applicable insurance policies and forwarded them to Marianne Veltri ("Veltri"), the claims manager at Custard Insurance Adjusters/Custard Claims Management Services ("Custard") and asked her to put the relevant carriers on notice of the claim. *Id*. at 7. Veltri began providing notice of the Complaint to Waukegan's primary and excess insurance carriers who provided coverage between 1988 and 2004 in July of 2004 and provided over a dozen notices to various carriers, brokers and agents. *Id*. at 9.

Ford told Veltri that the City's insurance carrier between November 1988 and November 1991 was International Special Risk Services ("International") and Veltri notified International of the Domiguez complaint on September 15, 2004. *Id*. at 10-11. About 9 months later, however, after having heard nothing from International, its agents contacted Veltri to tell her that she had sent the notice to the wrong address. *Id*. at 11. In an attempt to follow up on the information she received from International, Veltri contacted Michael McHugh ("McHugh") of Arthur J. Gallagher Risk Management Services ("AJG"), who had sold insurance policies to the city between 1988 and 1991. *Id*. at 12.

Veltri asked whether AJG would be the correct party for service of notice, since it sold the policies to the city. *Id*. Rich Stkluska of AJG advised Ford to notify Cynthia Shafer at International of the lawsuit, and Ford forwarded this information to Veltri. *Id*. at 14. From September 2004 until

4

the time of trial, Veltri attempted to identify a claims representative at International, but International did not assign a representative. *Id*. at 16.

International never told Waukegan or Custard that its policy did not include law enforcement liability coverage. *Id*. at 36. Neither the City's insurance consultant nor AJG notified Ford about the existence of the Scottsdale policies despite the fact that she specifically asked them what entities to notify of the *Domiguez* case. *Id*. at 38.

On September 26, 2006, Ford discovered that Waukegan's policies with International did not cover law enforcement liability. *Id*. at 18. She immediately reviewed the archives and discovered the three Scottsdale law enforcement liability policies covering from November 1, 1988 to November 1, 1991. *Id*. On September 27, 2006, Ford retrieved the policies from basement storage, forwarded them to Veltri and asked her to place Scottsdale on notice. *Id*. at 19. That same day, Veltri sent a notification letter via overnight mail to the law firm of Lord Bissell & Brook, which was listed in Scottsdale's policies as the recipient for service of suits. *Id*. at 20. The next day, she sent notice to Scottsdale via Federal Express. *Id*. Scottsdale did not receive direct notice of the lawsuit until September 29, 2006. Scottsdale 56.1 at 15. Before the trial began, Scottsdale assigned the *Domiguez* case a claim number and assigned Jim Hardina ("Hardina") as its claims representative. Waukegan 56.1 at 23.

The *Domiguez* case began jury trial on October 3, 2006. Scottsdale 56.1 at 14. Scottsdale did not appear to defend at the trial. Waukegan 56.1 at 26. Rather, counsel for Scottsdale through its claims administrator issued a reservation of rights letter to Waukegan on October 9, 2006, noting the City's failure to comply with the policies' conditions and reserving Scottsdale's right to disclaim coverage. Scottsdale 56.1 at 17. On October 17, 2006, the jury found in favor of Domiguez and

against Paul Hendley, a Waukegan police officer, and awarded Domiguez $9,063,000.00. *Id*. at 14, 18. In addition, on December 13, 2006, the Domiguez Court held the City liable as indemnitor for all sums Hendley was required to pay. Waukegan 56.1 at 31.

On November 29, 2006, Scottsdale advised Waukegan in writing that it had initiated its review of the *Domiguez* claim. Waukegan 56.1 at 39. Scottsdale filed a Complaint for declaratory judgment on January 5, 2007, alleging, among other things, that Waukegan breached the conditions of its policy with Scottsdale by failing to provide immediate notice of the *Domiguez* case. Scottsdale 56.1 at 4, 19.

## **MOTION TO STRIKE**

As a preliminary matter, Scottsdale moves to strike the affidavits of Ford and Veltri submitted by Waukegan in opposition to Scottsdale's Motion for Summary Judgment as well as various paragraphs included in Waukegan's Rule 56.1 Statement of Additional Facts. This Court declines to strike the affidavits but, in its discretion, strikes some of the Statements of Fact noted by Scottsdale.

Scottsdale first argues that this Court should strike the affidavits of Ford and Veltri because the supporting documents attached to the affidavits and the fact that Ford and Veltri had knowledge of notice of the lawsuit as given to AJG were not disclosed in Waukegan's Rule 26(a)(1) disclosure nor any supplements thereto. Generally, under Federal Rule of Civil Procedure 26(a), parties must provide the name of each individual likely to have discoverable information and the subject of such information that the party may use to support its claims or defenses as well as a copy or description by category or location of all documents the party has in its possession, custody or control that it may use to support its claims and defenses. *See* Fed. R. Civ. P. 26(a)(1)(A). Under Federal Rule

6

of Civil Procedure 37(c), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . .unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

Here, Waukegan listed Ford and Veltri as individuals likely to have discoverable information in its Rule 26(a) disclosures both under Scottsdale's unconsolidated case 07 C 64 and this case. In addition, it noted that it possessed documents related to "additional communications between Scottsdale and the City, the City's Attorney or third party administrator" as well as "additional correspondence between the City's attorney or third party administrator and the City's insurers and/or brokers providing updates on the status of the Domiguez litigation." Therefore, although Waukegan arguably did not disclose in detail that it intended to rely on communications between Ford, Veltri and AJG, Scottsdale was on notice that Waukegan intended to rely on Ford and Veltri's testimony as well as documentation of communications between Waukegan, its third party administrators and brokers, and Scottsdale.

More importantly, Scottsdale chose to file this Motion for Summary Judgment well ahead of the close of discovery and the dispositive motion filing deadline and even before the deadline for Rule 26(a) disclosures in the consolidated case. As such, they filed their motion with the risk that they had not received all potentially useful information from Waukegan through discovery. Waukegan, on the other hand, was forced to attempt to stave off this early motion for summary judgment relatively early in discovery. Waukegan cannot be precluded from using information to defeat summary judgment just because that information has not been fully disclosed when the motion at issue was filed in the earliest stages of discovery. As such, this Court declines to strike the Ford and Veltri affidavits both because Scottsdale had some notice of these witnesses and

documents and, more importantly, because they elected to proceed with summary judgment despite not having the benefit of full discovery.

In addition, Scottsdale asks this Court to strike various statements of fact asserted in Waukegan's Statement of Additional Facts because they are without citation, contain improper argument or inadmissable opinions. This Court strikes any statements of fact made without reference to the record and will disregard any improper argument or opinion contained in the statements of additional facts. *See* L.R. 56.1(3) (a party opposing summary judgment to file a response to the movant's Statement of Facts including a response to each of the movant's statements of fact including specific references to materials relied upon); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (a district court may refuse to consider statements of fact not in compliance with Local Rule 56.1). For the reasons stated above, Scottsdale's Motion to Strike is granted in part and denied in part.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a

proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

Scottsdale argues that this Court should grant summary judgment in its favor because Waukegan did not provide it immediate notice of the *Domiguez* case as required under the policies. Waukegan, in turn, argues first that a material dispute of fact exists as to whether it provided timely notice to Scottsdale's agent and second that Scottsdale is estopped from asserting a late notice defense because it neither defended Waukegan at the Domiguez trial nor filed a timely declaratory action.

### **Timeliness of Notice**

Scottsdale argues that it is entitled to summary judgment because Waukegan breached the Scottsdale policies' notice clauses. Notice of suit as required under an insurance policy is a condition precedent to coverage by the insurer. *See Bd. of Educ. of Township High School Dist. No. 211, Cook County v. TIG Ins. Co.*, 881 N.E.2d 957, 960 (Ill.App.Ct. 2007). As such, when an insured fails to comply with applicable notice provisions, the insurer may be relieved from its duties to defend and indemnify the insured under the policy. *See Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E.2d 999, 1005 (Ill.App.Ct. 2001)("A notice provision is a valid condition precedent and

9

not a mere technical requirement that the insured it free to overlook or ignore with impugnity. When facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law.").

The language of the Scottsdale policy required that Waukegan "shall immediately forward to the Company every demand, notice, summons or other process" received by it. There is no factual dispute that Waukegan first notified Scottsdale on September 29, 2006 – some twenty-eight months after the suit was filed. A lengthy passage of time between when an insured became aware of a claim and when it gave the insurer notice of the claim is not an absolute bar to coverage if the insured has a justifiable excuse for the delay. *See Zurich Ins. Co. v. Walsh Const. Co. of Illinois*, 816 N.E.2d 801, 805 (Ill.App.Ct. 2004). The law, however, requires an insured to act diligently in attempting to provide notice to its insurer, and the insured's excuse for the delay is of primary importance. *See Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 921 (Ill.App.Ct. 2000). This Court uses four factors to determine the reasonableness of notice: 1) the language of the policy itself; 2) the sophistication of the insured in the area of coverage; 3) when the insured became aware of the occurrence (or claim); and 4) the diligence of the insured in determining the availability of coverage after it learned of the occurrence (or claim). *See Zurich*, 816 N.E.2d at 805. This Court can determine reasonableness as a matter of law where the facts are not in dispute. *See Id*. at 806.

*Direct Notice to Scottsdale*

Scottsdale and Waukegan agree that the Waukegan police department received notice of the *Domiguez* suit on May 28, 2004 but did not provide notice of the lawsuit directly to Scottsdale until over two years later on September 29, 2006, only days before the start of jury trial on the case on

10

October 3, 2006. The Court will therefore address the four factors stated above in assessing the reasonableness of direct notice to Scottsdale.

Here, Scottsdale's policies specifically state that the insured should make Scottsdale aware of any occurrence as soon as practicable, and it should forward every process received on account of a claim or suit brought against it to Scottsdale *immediately.* This policy language clearly contemplates that Scottsdale must be given notice of a suit quickly. Here it was not given notice until two years after the suit was filed and Waukegan had notice of it.

Waukegan is also at the very least, a reasonably sophisticated insured. Waukegan is a city with a police department that is regularly sued for Section 1983 claims like those underlying the Domiguez lawsuit. *See*, *e.g.*, *Hunt v. Thomas*, No. 07 C 4733, 2008 WL 4442589 (N.D.Ill. September 26, 2008) (1983 claim against Waukegan police officers); *Banks v. Waukegan*, No. 04 C 7920 (N.D.Ill. March 12, 2007) (1983 claim against Waukegan police officers); *Velasquez v. Waukegan*, No. 05 V 4896, 2006 WL 1156441 (N.D.Ill. April 27, 2006) (1983 claim against Waukegan police officers). As such, this Court finds that Waukegan is a sophisticated insured in the context of a law enforcement liability policy.

The third factor, when the insured became aware of the claim, also weighs against Waukegan. Specifically, Waukegan admits that its police department received notice of the suit on May 28, 2004 - over two years before they gave notice to Scottsdale. Similar delays have been found to be unreasonable. *See*, *e.g.*, *Northbrook*, 729 N.E.2d at 924 (seventeen months); *Twin City Fire Ins. Co. v. Olde World Trading Co.*, 639 N.E.2d 584,589 (Ill.App.Ct. 1993) (forty-one months) *Sisters of Divine Province v. Interstate Fire & Casualty Co.*, 453 N.E.2d 36, 39 (Ill.App.Ct. 1983) (two years).

11

Last, this Court considers Waukegan's diligence in determining the availability of coverage once it learned of the *Domiguez* case. Here, many of Waukegan's actions demonstrate diligence on its part in notifying relevant insurers of the suit. Specifically, Ford instructed Veltri to notify insurance carriers soon after she received a copy of the *Domiguez* complaint, and Veltri was diligent in locating the proper party to contact at International. Ford and Veltri acted quickly to provide notice to Scottsdale once Ford discovered that Scottsdale's policies covered the time periods at issue in the *Domiguez* complaint. Waukegan provides no excuse, however, for the fact that it took it two years to discover that Scottsdale's law enforcement liability policies were relevant other than that neither AJG nor the Waukegan insurance consultant informed them.

In addition to the four factors discussed above, courts often consider whether the insurer was prejudiced by delayed notice. *See TIG*, 881 N.E.2d at 960. If the insurer did not receive reasonable notice of a lawsuit, however, the insured may not recover under the policy regardless of whether the insurer was prejudiced. *See Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 346 (Ill. 2006). Here Scottsdale was prejudiced by the lack of notice. Notice provisions contained in insurance policies are generally intended to ensure that the ensure will have a reasonable time to investigate claims that may fall under the insurance policy and defend the insured against those claims. *See Zurich*, 816 N.E.2d at 805 *citing Am. Country Ins. Co. v. Efficient Constr. Corp.*, 587 N.E.2d 1073, 1075 (Ill.App.Ct. 1992). Here, Scottsdale received notice of the *Domiguez* case only four days before trial. As such, it missed out on any opportunity to investigate the claim or participate in preparation of a defense before the case went to trial, and the entire purpose of the notice provision was defeated. *See Northbrook*, 729 N.E.2d at 924 (inability to participate in pretrial discovery); *Twin City*, 639 N.E.2d at 589 (insured took 41 depositions and incurred extensive

attorneys' fees before notification). Had Scottsdale received appropriate notice, it could have used its resources and skills to assess the risk of the trial and determine whether it would be in its best interest to work on a settlement in the matter. Insurers are in the business of doing just that, making a determination of the risks involved in proceeding to trial and receiving an adverse verdict. In light of the facts presented, specifically the DNA evidence which led to the defendant being released from prison after serving a significant amount of time incarcerated, the risk of an adverse decision would seem likely. But that was for Scottsdale to determine with all of the actuarial resources and jury reporter evidence available to it in order to make an informed decision. It was simply not reasonable to expect Scottdale to make that decision based upon the two year delay in providing it notice of the claim, the case, and the facts.

Scottsdale's policies required immediate notice, yet Waukegan, a sophisticated insured, did not give notice until over two years after it learned of the *Domiguez* suit, effectively precluding Scottsdale from participating in pretrial matters and trial. Although Waukegan clearly exerted an effort to notify insurers, the only excuse it gives as to why it did not notify Scottsdale for over two years is that it simply forgot that the Scottsdale policies covered the events at issue. This excuse does not justify the lengthy delay in notification.

*Notice to AJG*

Waukegan argues that despite its delay in notice directly to Scottsdale, a dispute of material fact exists as to whether it breached the notice provision of its policies because it may have provided notice to an agent of Scottsdale, thereby effectively providing notice to Scottsdale. Specifically, Waukegan argues that it provided notice within a reasonable time to AJG, who sold it the Scottsdale policies to it that and there remains a dispute of fact a to whether AJG is Scottsdale's agent.

13

If AJG is Scottsdale's agent, then notification to AJG is legal notification to Scottsdale. *See State Sec. Ins. v. Burgos*, 583 N.E.2d 547, 551 (Ill. 1991). Illinois differentiates, however, between insurance brokers and insurance agents, and if AJG is merely a broker, its knowledge is not imputed to Scottsdale. *See Rossoff v. Cincinnati Ins. Co.*, 26 F.Supp.2d 1095 *citing Economy Fire & Cas. Co. v. Bassett*, 525 N.E.2d 539, 543 (Ill.App.Ct. 1988). The question of whether an insurance broker is an agent of the insured or the insurer can be decided as a matter of law when the evidence clearly shows that the broker is an agent of the insured. *See Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264 (7th Cir. 1986).

In determining whether an intermediary is an agent or a broker, Illinois Courts apply a four part test considering: 1) who called the intermediary into action; 2) who controls its actions; 3) who pays the intermediary; and 4) whose interests the intermediary represents. *See Mizuho Corporate Bank v. Cory & Assoc.*, 341 F.3d 644, 654 (7th Cir. 2003). An insurance agent has a fixed and exclusive relationship with the insurance company that he represents. *See Id.*; *see also Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F.Supp.2d 847, 851 (N.D.Ill. 2001). Conversely, a broker is not employed by any specific company. *See Lazzara*, 802 F.2d at 264.

There are no facts in evidence that allow this court to clearly address the four part test. The facts, however, including those brought to this Court's attention by Waukegan, demonstrate that AJG was not an agent of Scottsdale. To begin, AJG did not have an exclusive relationship with Scottsdale. Waukegan purchased both the Scottsdale policies and the International policies from AJG. *See INA Ins. Co. Of Ill. v. City of Chicago*, 379 N.E.2d 34, 37 (Ill.App.Ct. 1978) (city could not rely on agent to relay notice intended for one carrier to another carrier that also worked with that agent). In addition, Waukegan clearly did not think that AJG was an agent of Scottsdale.

14

Specifically, once it realized that the *Domiguez* lawsuit was covered by the Scottsdale policies, months after it had begun discussing the lawsuit with AJG, it rushed to put Scottsdale on notice of the suit. Waukegan even affirmatively stated in its Counterclaim against Scottsdale that "The City provided actual notice of the Domiguez lawsuit and the status of the proceedings to Scottsdale on September 27 and 28, 2006."

Waukegan has not set forth any facts averring that it did not call AJG into action, that it does not control AJG's actions, that it does not pay AJG or that AJG does not represent its interests. The only evidence fact they submit is that one Scottsdale notice of non-renewal issued in July of 1989 is carbon-copied to AJG in the following format:

CC: Home Office
     Agent -
          Arthur J. Gallagher & Co.
     File

This alone is simply insufficient to support a dispute of material fact as to whether AJG was Scottsdale's agent when Waukegan's own statements of fact and other facts well within Waukegan's control are not set forth. In fact, AJG's corporate website makes clear that it is an insurance broker. The Court may take judicial notice of the contents of the website. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that courts may take judicial notice that a website contains information because that fact is not subject to reasonable dispute); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website). The front page of AJG's website states, in large print, that AJG is "one of the world's largest insurance brokerage and risk management services firms" and that it provides "a full range of property/casualty and employee benefits products and services to clients of all sizes." Arthur J. Gallagher & Co. Home Page, http://www.ajg.com. In a separate section

15

titled "Our Mission," AJG states that it is "an international Sales and Marketing company that plans and administers cost-effective, differentiated property/casualty and human resource risk management programs as brokers, consultants and third-party administrators." *Id*. Nowhere on its site does AJG mention that it represents any particular or particular group of insurance providers. These statements make clear that AJG is an insurance brokerage serving the needs of its client, here Waukegan, with a variety of products rather than an agent or representative of any particular insurance company. Because AJG was acting as a broker and not as an agent, and because the facts are not in dispute, this Court finds that Scottsdale did not receive adequate notice of the Domiguez suit as a matter of law

**Estoppel**

Waukegan also argues that regardless of whether it violated the notice provisions of the Scottsdale policy, Scottsdale is estopped from asserting policy defenses. If an insurer takes the position that its policy does not cover a complaint filed against an insured and the policy includes a duty to defend, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *See Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d. 1122, 1134-35 (Ill. 1999). If the insurer does not take either of these steps, it is estopped from raising policy defenses to coverage, including late-notice defenses. *See Id*. at 1135-36. Here, Scottsdale agrees that under the policies, it had a duty to defend Waukegan and that it did not fulfill that duty but argues that it properly filed for a declaratory judgment.

In order to avoid estoppel, the insurer must filed a declaratory judgment action "in a timely manner." *State Auto. Mut. Ins. Co. v. Kingsport Development, LLC*, 846 N.E.2d 974, 986 (Ill.App.Ct. 2006). A declaratory judgment action filed after the underlying action has been resolved

16

is generally untimely as a matter of law. *See Ehlco*, 708 N.E.2d at 1138. This is not the case where notice was given so late that "the insurer was given no opportunity to defend or participate in the underlying suit." *Northern Ins. Co. of New York v. City of Chicago*, 759 N.E.2d 144, 151 (Ill.App.Ct. 2001) (no estoppel where suit proceeded for two and one half years before notice and declaratory action filed four months after notice even though suit settled before declaratory suit was filed) *citing Ehlco*, 708 N.E.2d at 1135; *see also Fed. Ins. Co. v. Arthur Andersen LLP*, 522 F.3d 740, 744 (7th Cir. 2008) (bar to policy defenses after underlying case is completed should not apply where case was settled quickly without insurer's input and declaratory judgment action was filed only seven months after notice); *Kingsport*, 846 N.E.2d at 987 (although the status of the underlying suit is a factor in the decision, declaratory judgment action is only required to be filed within a "reasonable time" of notification of the underlying suit).

Waukegan gave Scottsdale notice of the *Domiguez* case a mere four days before jury trial began. As such, Scottsdale had no meaningful opportunity to participate in the underlying suit. Quite notably, Scottsdale had only eighteen days between when it received notice and when the jury trial concluded. Once Scottsdale received notice, it acted diligently, issuing a reservation of rights letter on October 9, 2006 - before the jury trial ended and only ten days after it received its first notice of the claim. It filed its declaratory action on January 7, 2007, slightly over three months after it received notice of the *Domiguez* suit. Three months is a reasonable time in which to filed a declaratory action. *See Fed. Ins. Co.*, 522 F.3d at 744 (treating an eight month delay as excessive is "questionable"); *Northern Ins. Co.*, 759 N.E.2d at 151-52 (delay reasonable where insurer waited four months to deny coverage and ten months to file a declaratory action); *Kingsport*, 846 N.E.2d at 988 (seven month delay reasonable). As such, because Scottsdale filed its action for declaratory

17

judgment within a reasonable time of notification of the *Domiguez* suit, it is not estopped from arguing its late notice defense.

For the reasons stated above, Scottsdale's Motion for Summary Judgment is granted and Scottsdale's Motion to Strike is granted in part and denied in part.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 30, 2009