IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN SAFETY CASUALTY INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>CITY OF WAUKEGAN,<br><br>      Defendant.<br>-----------------------------------------------------------<br>CITY OF WAUKEGAN,<br><br>      Counter-Plaintiff,<br><br>      v.<br><br>AMERICAN SAFETY CASUALTY INSURANCE COMPANY, INTERSTATE INDEMNITY COMPANY, CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, NORTHFIELD INSURANCE COMPANIES, WESTPORT INSURANCE CORPORATION, EVANSTON INSURANCE COMPANY, S. ALEJANDRO DOMINGUEZ, AND PAUL HENDLEY,<br><br>      Counter-Defendants. | Case No. 07 C 1990<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

This long-running insurance coverage dispute between the City of Waukegan, Illinois ("Waukegan" or "the City") and its various insurers arises from a $9,063,000 verdict entered against Waukegan in a civil rights case brought by S. Alejandro Dominguez, who was convicted of rape in 1990 after an investigation by Waukegan police officer Paul Hendley but later exonerated. The primary issue in this case is which, if any, of the City's various insurers must cover the loss to the City from the verdict and the resulting judgment. On March 3, 2011, the Court entered summary

judgment for Waukegan and against two of those insurers, primary carrier American Safety Casualty Insurance Company ("American Safety") and excess carrier Interstate Indemnity Company ("Interstate"), finding that those two carriers insured the City in 2002 when Dominguez's due process claim against the City accrued, and the City's loss was the $11,397,195.39 it paid to satisfy the Dominguez judgment ("March 3 Opinion"). (Doc. 811.) The Court also granted summary judgment in favor of the other carriers in that opinion.

Because the record was underdeveloped on this point, the Court asked American Safety and Interstate to brief the issue of who is responsible for the $2,334,195.39 difference between the verdict and the judgment. In addition, both American Safety and Interstate move the Court to reconsider or clarify its March 3 Opinion under Rule 59(e). (*See* Docs. 814 and 819.) For the below reasons, the Court denies both motions alter or amend the judgment and finds that responsibility for the City's $11,397,195.39 loss breaks down as follows:

| Category | Responsible Party | Amount |
|---|---|---|
| Self-Insurance Retention | Waukegan | $100,000 |
| American Safety policy limits | American Safety | $1,000,000 |
| Interstate's excess layer | Interstate | $7,963,000 |
| American Safety's pro rata share of interest on judgment | American Safety | $138,570.12 |
| Interstate's pro rata share of interest on judgment | Interstate | $1,103, 434.97 |
| Dominguez's attorney's fees in underlying suit and appeal | American Safety | $1,067,637.86 |
| Dominguez's costs on appeal | American Safety | $13,757.95 |
| Interest on Dominguez's attorney's fees | American Safety | $10,794.49 |
| | | **Total: $11,397,195.39** |

**I.      MOTIONS TO ALTER OR AMEND JUDGMENT**

   **A.      Standard**

Rule 59(e) allows a party to bring to the Court's attention manifest errors of law or fact or newly discovered evidence. *See United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Manifest error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A Rule 59(e) motion is not a "vehicle for a party to undo its own procedural failures, and it certainly does not allow a party introduce new evidence or advance arguments that could have and should have been presented to the district court prior to the judgment." *Resnick*, 594 F.3d at 568. Nor is a Rule 59(e) motion an avenue to rehash arguments already considered and rejected by the Court. *Oto*, 224 F.3d at 606 ("A 'manifest error' is not demonstrated by the disappointment of the losing party."). Manifest errors of law are the "rare" instances where "the Court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990). Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

   **B.      Responsibility for False Arrest Damages**

First, American Safety and Interstate both content that the amount they must pay as a result of the Dominguez verdict should be reduced because some of the damages were awarded for Dominguez's false arrest claim. The facts of the underlying case are laid out in detail in the March 3 Opinion. For current purposes, it is sufficient to note that Dominguez brought two claims against the City, one for false arrest and the other for denial of due process. Dominguez's false arrest claim "occurred" (or accrued) for insurance purposes in 1989, while his due process claim accrued in 2002,

when he was exonerated. (March 3 Opinion at 36-39); *Nat'l Casualty Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010) (finding that false arrest claims accrue when the plaintiff is held under a warrant and that due process claims accrue when the plaintiff's conviction is reversed). American Safety and Interstate did not insure the City in 1989.[1] They argue that, to the extent the verdict included damages for Dominguez's false arrest claim, they are not responsible for those damages. Setting aside that the carriers did not raise this issue on summary judgment, the Seventh Circuit's opinion on the direct appeal of the underlying case forecloses this argument. In rejecting Hendley's assertion that Dominguez had not shown that Hendley arrested him without probable cause, the court found such a lack of evidence "would be relevant only if the verdict were based on a false arrest claim, but it was not." *Dominguez v. Hendley*, 545 F.3d 585, 590 (7th Cir. 2008). Later, the court reiterated that "Dominguez's claim was for deprivation of a fair trial rather than false arrest." *Id.* at 592. That determination is binding on the Court. The City has demonstrated that the entire verdict is traceable to the due process claim that accrued during American Safety and Interstate's policy periods.

### C. Self-Insured Retention Provision

American Safety raises two issues in its motion regarding its policy's self-insured retention (SIR) provision. First, American Safety asserts, as it did on summary judgment, that it had no duty to defend Waukegan under the terms of the policy until the City satisfied the $100,000 SIR. In the March 3 Opinion, the Court determined that the SIR language was susceptible to two competing interpretations and construed it in favor of the City as the insured as directed by Illinois law. (March 3 Opinion at 42); *Employers Ins. v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1130 (Ill. 1999)

---

[1] Scottsdale Insurance Company was the City's insurer in 1989. The Court granted summary judgment to Scottsdale early in the case because the City did not give Scottsdale notice of the Dominguez suit. (*See* Doc. 236.)

("Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation in will follow . . . rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy.") American Safety's argument is a rehash of the argument that the Court already rejected. Construing American Safety's argument in the best possible light, it suggests that the *Ehlco* tie-breaker only applies where the language at issue is ambiguous. It is true that the Court did not use the word "ambiguous" in the March 3 Opinion. But the Court cited *Ehlco* and found that the SIR language was subject to two reasonable and competing interpretations, which is the definition of ambiguity. *See id.* (a policy provision is ambiguous "if it is subject to more than one reasonable interpretation.") In any event, to the extent the March 3 Opinion is unclear, the Court clarifies that it found the SIR provision to be ambiguous.

American Safety, in its reply brief, asserts that the City has made a statement that demonstrates the SIR provision is not ambiguous in another coverage suit pending in the Circuit Court of Lake County, Illinois. In that suit, American Safety is seeking declaratory judgment that it owes no duty to defend or indemnify Waukegan for a civil rights suit filed by Bennie Starks. (*See* 09 C 7402, N.D. Ill.) Starks has not been exonerated yet, so that case has been stayed pending Starks' criminal retrial. (*See* Doc. 852 at 61-68.) In its motion to dismiss or stay the state case, the City stated that if Starks is convicted at his re-trial, he will have no civil rights claim and "any request for defense and indemnification from [American Safety] will be moot because the $100,000 retention will not have been exhausted." (Doc. 852 at 19.) According to American Safety, this statement demonstrates that Waukegan knows that the duty to defend does not kick in until the City exhausts the SIR.

5

American Safety's argument is unpersuasive. Waukegan's motion to dismiss, read in its entirety, clearly states that Waukegan believes American Safety must defend the City in the *Starks* suit. (Doc. 852 at 15 ("this Court should find in favor of the City on coverage and a duty to defend, and against [American Safety]."); at 16 "Based on the face of the pleadings, this [C]ourt should find that [American Safety] has a duty to defend the City and the individual police officers.").) The sentence cited by American Safety regarding the SIR is merely the City's recognition that because American Safety denied coverage and is not defending the City in the *Starks* case, American Safety would reimburse the City for the defense costs, not pay them directly, if the state court finds American Safety has a duty to defend the City. The Court will not give the City's "admission" estoppel effect.

D.     **Vexatious and Unreasonable Finding**

Finally, American Safety takes issue with the Court's finding that its conduct was "vexatious and unreasonable," making it liable for Waukegan's attorney's fees under Illinois Insurance Code § 155. The Court found American Safety was "vexatious and unreasonable" because it sat on its hands: American Safety did not deny coverage or issue a reservation of rights letter for two years, and did not definitively deny coverage until right before trial. (March 3 Opinion at 50.) In short, American Safety did nothing to indicate to Waukegan that it was denying coverage. (*Id.*) American Safety gives three reasons why the Court should reconsider the March 3 Opinion on this issue: (1) American Safety thought the City had been dismissed from the lawsuit; (2) American Safety's conduct was reasonable given the law was unsettled before *McFatridge*; (3) the SIR was not exhausted; (4) the City had voluntarily assumed the obligation of covering Hendley.

6

These are repackaged summary judgment arguments. The Court addresses them briefly in turn. First, even if American Safety thought the City was dismissed from the suit, it knew that Hendley, a City employee, was still a defendant. (*See* March 3 Opinion at 10, 18 (noting Hendley was engaged in law enforcement activities under Waukegan's supervision and control and that the definition of "Insured" in American Safety's policy included Hendley); *see also* Doc. 672 at 4 ("[American Safety] does not dispute . . . that Hendley was an Insured.").) Second, even accepting American Safety's contention that the law concerning accrual of due process claims was unsettled before *McFatridge*, American Safety did not act like it. It did not deny coverage on those grounds, tell the City why it thought the law was unsettled, or file a declaratory judgment action to settle the issue. Rather, it did nothing. (*See id.* at 51.) The third argument is the same argument rejected above and in the March 3 Opinion. (*Id.* at 42-44.) Similarly, the Court rejected American Safety's fourth argument in the March 3 Opinion when it found that the City's indemnification of Hendley was not voluntary but rather required by Illinois law. (*See id.* at 56-59.) American Safety offers no "manifest error" of law or fact justifying reconsideration of the March 3 Opinion.

## II.   RESPONSIBILITY FOR WAUKEGAN'S LOSS

In the March 3 Opinion, the Court found that the City had to pay $11,397,195.39 to satisfy the Dominguez judgment, of which only $9,063,000 represented the verdict. The City provided the following breakdown of the remaining $2,334,195.39:[2]

---

[2] The City made two payments to satisfy the Dominguez judgment. The second payment was effectively a settlement of a number in dispute at roughly 96.6% of the amount Dominguez sought. The City presented figures that prorate the reduction from the settlement across all the categories (*see* Doc. 860), while the carriers submitted a slightly different breakdown that does not appear to take into account that compromise. There is no dispute as to the total: both proposed breakdowns add up to $2,334,195.39. Though the differences between the breakdowns are small relative to the total judgment in this suit, the City's numbers are more precise, and the Court adopts them.

7

| Category | Amount |
|---|---|
| (1) Interest on underlying verdict | $1,242,005.09 |
| (2) Dominguez's attorney's fees in underlying suit and appeal | $1,067,637.86 |
| (3) Dominguez's costs on appeal | $13,757.95 |
| (4) Interest on Dominguez's attorney's fees in the underlying suit | $10,794.49 |
|  | **Total: $2,334,195.39** |

Interstate contends that American Safety is responsible for all four categories under the supplemental payments provision of American Safety's policy. American Safety, in turn, claims Interstate is responsible for the portion of the interest that corresponds to the proportion of the verdict it is paying. It also asserts that Interstate should pay for the remaining categories, because they are "damages" resulting from the City's indemnification of Hendley, not supplementary payments that American Safety must pay. The City thinks that American Safety is on the hook for the second, third and fourth categories, and that the interest should be paid pro rata.

The Court begins with the policies. The American Safety policy states that in addition to its policy limits, it will pay "[a]ll costs taxed against the 'Insured' in the 'Suit,'" as well as "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid . . . the part of the judgment that is within the applicable limit of insurance." (Doc. 849 at 3.) Interstate's policy, on the other hand, states that Interstate "will not pay expenses . . . [c]overed by any 'underlying insurance' . . . ." (Doc. 849 at 6.) It also states that Interstate will pay its "proportionate share of . . . [i]nterest on the amount of any judgment that accrues after entry of the judgment and before we have paid . . . the part of the judgment that is within our applicable Limit of Insurance." (*Id.*) In other words, as to interest, the policies overlap: American Safety's policy

8

states that it will pay the full amount of interest on the judgment, and Interstate's states that it will pay its proportionate share.

### A. Interest

Illinois courts have not squarely answered the question of how to apportion responsibility for interest when the primary and excess insurers have overlapping obligations to pay interest in their policies. Decades ago, the Illinois Supreme Court recognized that an insurer that obligates itself to pay "all interest" accruing after a judgment must pay the interest on the entire judgment, not just the portion of the judgment that the insurer is responsible for. *See River Valley Cartage Co., Inc. v. Hawkeye-Security Ins. Co.*, 161 N.E.2d 101, 103 (Ill. 1959). Though *River Valley* did not concern a dispute between a primary and excess carrier, an Illinois appellate court has since addressed such an instance. *See Hartford Accident and Indemn. Co. v. Aetna Ins. Co.*, 527 N.E.2d 665 (Ill. App. Ct. 1988). In *Hartford*, the primary insurer's policy, like American Safety's, stated that it would pay all interest on the judgment, and the primary carrier agreed that had the insured not purchased excess insurance, the primary carrier would have to pay all the interest under *River Valley*. *Id.* at 667. The excess carrier also had an "all interest" provision, but it only applied when the excess carrier (as an umbrella insurer) acted as the primary carrier. *Id.* at 668. In other words, the primary policy had an "all interest" provision, and the excess policy was effectively silent on the issue. *See id.* The court found that the primary policy provision applied and rejected the primary carrier's argument that the excess insurer should pay a pro rata portion of the interest. *Id.* In doing so, the court noted that if insurers wanted to provide for pro rata sharing between primary and excess insurers, they could do so in the policies. *Id.* One federal court applied *Hartford* to find the primary carrier had to pay all the interest, even on the portion of the judgment that the excess carrier covered. *See Ranger Ins. Co.*

*v. Home Indemnity Co.*, 714 F. Supp. 956, 959 (N.D. Ill. 1989) (noting "the existence of excess coverage does not change [the primary carrier's] duties under the post-judgment clause.").

As American Safety points out, *Ranger* made no mention of a clause in the excess policy concerning paying interest, and *Hartford* found that the excess policy did not have one that applied. According to American Safety, this case is different than *Ranger* and *Hartford* because Interstate, as excess carrier, agreed to pay its pro rata share instead of staying mum on the subject. That position finds support in the Illinois Supreme Court's decision affirming *Hartford*. *See Hartford Accident and Indemn. Co. v. Aetna Ins. Co.*, 547 N.E.2d 114, 116 (Ill. 1989). There, the primary carrier urged the Illinois Supreme Court to follow a Michigan case where the court applied pro rata sharing. *See id.* (citing *Matich v. Modern Research Corp.*, 420 N.W.2d 67, 77 (Mich. 1988).) The court noted that in the Michigan case, the primary and excess carriers had overlapping obligations to pay all the interest. *Hartford*, 547 N.E.2d at 116. Contrasting the case with the case before it, the court stated:

> Had both carriers assumed identical obligations, the solution which [the primary carrier proposed], and which [the Michigan case] adopted, might have been considered. In the case *sub judice*, however, the insurers' policies were not duplicate; nor did they conflict. Given the facts of this case, we see no reason to impose liability upon [the excess carrier] which it did not contract to undertake . . . .

*Id.* at 117. American Safety also suggests it makes sense to read its policy and Interstate's policy together, given that Interstate's policy is a "follow form" excess policy. If the policies are read together as one contract, the Court would apply the Interstate interest provision. *See Clinton Imperial China, Inc. v. Lippert Mktg., Ltd.*, 878 N.E.2d 730, 738 (Ill. App. Ct. 2007) (contracts must be interpreted so as to give all terms effect).

10

Here, the policies overlap, because they both say that they will pay interest (all or part). The Illinois Supreme Court's fear that an excess carrier would be saddled with a liability it had not anticipated or baked into the premium is not a concern here: Interstate has presumably priced into its premiums the possibility it would have to pay interest on a part of a judgment because that term is part of its policy. Further, because Interstate's policy is a "follow form" policy, it explicitly references American Safety's primary policy as the underlying insurance. (*See* Doc. 470 at 3.) Given that American Safety's policy language explicitly covers all interest on the judgment, Interstate could have deleted its interest provision. It did not. Pro rata sharing best balances the Illinois Supreme Court's guidance and the unique circumstances of the overlapping coverages of these policies.[3]

After applying the City's $100,000 SIR, the portion of the verdict that the carriers are responsible for is $8,963,000. American Safety is responsible for $1,000,000, or 11.16 percent. Interstate is responsible for the remaining 88.84 percent. Multiplying those percentages by the amount of interest on the underlying judgment ($1,242,005.09), American Safety is responsible for $138,570.12 and Interstate is responsible for $1,103, 434.97.[4]

---

[3] The Court recognizes that pro rata sharing gives American Safety a "windfall" in the sense that it has to pay less interest because the City chose to buy excess insurance from Interstate. A windfall is unavoidable here: adopting Interstate's view would give a windfall to Interstate, because Interstate would not have to pay any interest after receiving premiums that factored in the possibility of paying some interest.

[4] American Safety claims that the interest provision in its policy, by its plain terms, only obligates American Safety to pay interest on the part of the judgment it must pay. (*See* Doc. 854 at 4-5.) The clause American Safety refers to, "the part of the judgment that is within the applicable limit of insurance," does not modify the part of the provision that obligates American Safety to pay "all interest on the full amount of any judgment." Rather, it concerns only the when American Safety's obligation to pay interest ends, namely, "when it has paid, offered to pay, or deposited in the court" the amount of the judgment it is responsible for.

B.      Costs[5]

Finally, the Court turns the issue of which carrier, if any, is responsible for paying Dominguez's attorney's fees, appeal costs, and interest on the attorney's fees. Interstate asserts that American Safety's policy is clear: it is responsible for all "costs" taxed against the insured, and attorney's fees are "costs" under *Littlefield v. McGuffey*, 979 F.2d 101 (7th Cir. 1992). In *Littlefield*, the Seventh Circuit interpreted a costs policy provision almost identical to the one in American Safety's policy. *Id.* at 103. Reading that provision together with 42 U.S.C. § 1988, which allows "a reasonable attorney's fee as part of the costs" to the prevailing party in a civil rights case, the court found that the insurer had to pay, as costs, the plaintiff's attorney's fees charged against the insured in the underlying suit. *Id.* at 104-05. According to Interstate, applying the language of the policy, American Safety is responsible for Dominguez's costs on appeal, and applying *Littlefield*, American Safety must pay Dominguez's attorney's fees (and the resulting interest).

American Safety contends *Littlefield* does not apply here because the verdict was against Hendley, not the City, and the City had to pay Dominguez's attorney's fees only as Hendley's indemnitor. Under American Safety's view, Dominguez's attorney's fees are more properly considered "damages" and should be paid by Interstate as part of the excess layer. The Ninth Circuit has found that attorney's fees that the insured paid as part of an indemnity agreement were "damages," not supplementary payments. *See R.W. Beck & Associates v. City and Borough of Sitka*, 27 F.3d 1475, 1484-85 (9th Cir. 1994). In *Beck*, a town hired a contractor to work on its dam. *Id.* at 1477. One of the workers died while inspecting the dam, and his widow brought a wrongful death

---

[5] American Safety initially admitted that it is responsible for Dominguez's costs on appeal and interest on Dominguez's attorney's fees. (*See* Doc. 848 at 3). In later briefing, it changed its mind and claimed Interstate was responsible for those items. (*See* Doc. 854 at 9.) The Court finds that American Safety is responsible for all the costs irrespective of the admission.

12

case in state court against the contractor and the town, winning a judgment against both. *Id.* at 1477-78. The contractor then sued the town in federal court on an indemnity contract between the contractor and the town; the town's insurers joined that suit as well. *Id.* Attorney's fees were awarded against the contractor in the wrongful death suit. *Id.* at 1484. In the indemnity suit, the town had to reimburse the contractor for those fees, per the indemnity contract. *Id.* Another set of attorney's fees were awarded to the contractor, and against the town, in the indemnity suit because the contractor won the suit. *Id.* As to the town's insurers, the question became whether the two sets of attorney's fees should be considered "damages" or as "costs" covered as supplementary payments. *Id.* at 1483. The Ninth Circuit agreed with the district court that the attorney's fees incurred by the contractor in the wrongful death case and paid by the town in the indemnity suit were "damages," not supplementary payments, because they were not "taxed" to the town, but only passed to the town via the indemnity contract. *Id.* at 1484. The attorney's fees the town paid because it lost the indemnity suit, on the other hand, were "typical of the fees and costs intended to be covered under a standard supplementary payments provision." *Id.* at 1485. The distinction, according to the Ninth Circuit, derived from "the reasonable expectation of a lay person." *Id.*

Here, the indemnity was the result of a long-established statute (the Illinois Tort Immunity Act, 745 ILCS 10/9-102), not a contract. The City, American Safety and Interstate bargained for these policies against the background of that statute. When American Safety insured the City, it included coverage for employees including Hendley. In short, American Safety had to know, when it issued the policy, that it would be paying judgments entered against the City's employees. As a practical matter, the City was always on the hook for Hendley's damages, and the indemnification was merely a legal formality—expected by both the City and American Safety—that the underlying

13

court used to make it clear that the City had to pay the judgment against Hendley. Indeed, in its order requiring the indemnification, the court in the underlying case referenced and relied the City's statements admitting "Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities." (*See* Doc. 842 at 70.) *Beck*, in contrast to this case, concerned a specific indemnity contract that the town and the contractor entered into after the policies were issued to the town. In other words, it was not a foregone conclusion that the town would indemnify the contractor when the town bought insurance. Given that American Safety expected all along that it would be covering judgments against City employees (and their associated "costs"), American Safety should not escape its obligation simply because the court in the underlying case wanted to be clear and to avoid the possibility that Dominguez would have to sue the City to force it to indemnify Hendley under the Illinois Tort Immunity Act. Dominguez's fees are better characterized as "costs" that American Safety must pay under its policy (*see Littlefield,* 979 F.2d at 104-05), not damages.

## III. CONCLUSION

For the reasons above, the Court denies both motions to alter or amend the judgment (Docs. 814, 819.) The Court enters judgment in favor of Waukegan and against American Safety for $2,230,760.42, the sum of the items American Safety is responsible for as shown in the table above. The City is also entitled to its attorney's fees for the current suit with respect to its counterclaims against American Safety as laid out in the March 3 Opinion. The Court also enters judgment in favor of Waukegan and against Interstate for $9,066,434.97, as noted above.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 6, 2011