**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **AMERICAN SAFETY CASUALTY INSURANCE COMPANY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 07 C 1990** |
| ) | |
| **CITY OF WAUKEGAN,** ) | **Magistrate Judge Finnegan** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |
| ) | |
| **CITY OF WAUKEGAN,** ) | |
| ) | |
| **Counter-Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **AMERICAN SAFETY CASUALTY INSURANCE COMPANY, INTERSTATE INDEMNITY COMPANY, CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, NORTHFIELD INSURANCE COMPANIES, WESTPORT INSURANCE CORPORATION, EVANSTON INSURANCE COMPANY, S. ALEJANDRO DOMINGUEZ, and PAUL HENDLEY,** ) | |
| ) | |
| **Counter-Defendants** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This insurance coverage dispute between the City of Waukegan, Illinois ("Waukegan" or "the City") and its insurers arose from a $9,063,000 verdict entered against the City in a civil rights suit brought by S. Alejandro Dominguez, who was convicted of rape but later exonerated. At issue in this case was which, if any, of the City's various insurers were required to cover the City's loss from the *Dominguez* judgment. On March 3, 2011,

the district judge entered judgment in favor of the City and against two of its insurers, primary carrier American Safety Casualty Insurance Company ("American Safety") and excess carrier Interstate Indemnity Company ("Interstate"), finding that those two carriers insured the City when Mr. Dominguez's due process claim against it accrued and are obligated to indemnify the City for the judgment against it, and that the City's loss was the $11,397,195.39 it paid to satisfy the judgment, including interest, attorneys' fees, and costs. (Docs. 811, 884). Pursuant to Section 155 of the Illinois Insurance Code, the district judge also awarded the City its attorneys' fees for litigating its declaratory judgment action against American Safety. As to the other carriers in the case, the district judge granted summary judgment in their favor. Because the record was underdeveloped, the district judge ordered briefing concerning who is responsible for the $2,334,195.39 difference between the verdict and judgment. On July 6, 2011, the district court issued a Memorandum Opinion and Order allocating the City's $11,397,195.39 loss by amount and responsible party. (Doc. 884). After denying the parties' motions to alter or amend the judgment, the district judge entered an order and final judgment disposing of this matter on July 29, 2011. (Doc. 910).

The City now seeks to recover its costs from American Safety and Interstate pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, as well as its attorneys' fees from American Safety pursuant to the district judge's order of March 3, 2011. The district judge referred the City's bills of costs and fee petition to this Court for decision. For the reasons set forth below, the City of Waukegan is awarded $4,265.23 in costs and $255,376.84 in attorneys' fees and costs from American Safety, and $2,954.76 in costs from Interstate.

## DISCUSSION

### A.    The Bills of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party" unless "a court order provides otherwise." Rule 54(d) creates a "strong presumption that costs will be awarded to the prevailing party," and that presumption is "difficult to overcome." *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997).  Under 28 U.S.C. § 1920, recoverable costs include (1) fees of the clerk and marshal, (2) fees for transcripts necessarily obtained for use in the case, (3) fees and disbursements for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters.  *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007).  Costs are not recoverable if they were incurred solely for the convenience of the prevailing party.  *Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 750 F.Supp.2d 962, 969 (N.D. Ill. 2010).

There is no dispute here that the district judge entered judgment in favor of the City on the claims concerning American Safety and Interstate, and that the City is the prevailing party in this lawsuit.  (Docs. 811, 884).  *See also Republic Tobacco Co.*, 481 F.3d at 446 (quoting Moore's Federal Practice § 54.101[3] (3d ed. 2006)) ("Courts and commentators have interpreted 'prevailing party' to mean 'the party in whose favor judgment has been entered.'")).  The prevailing party has the "'burden of demonstrating the amount of its recoverable costs.'" *Trading Tech. Int'l*, 750 F.Supp.2d at 969 (citation omitted).  But the

losing party "bears the burden of an affirmative showing that taxed costs are not appropriate." *Davis v. Budz*, No. 99 C 3009, 2011 WL 1303435, at *1 (N.D. Ill. Mar. 31, 2011) (quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005)).

The City petitions that American Safety pay the following costs totaling $16,295.69: (1) $1,108.76 for witness appearance and mileage fees; (2) $1,981.33 for deposition and hearing transcript costs; (3) $306.20 for attorney travel costs; (4) $247.79 for commercial copying costs; and (5) $12,651.61 for internal copying costs, which includes a "cost allowance" in the amount of $8,611.27. (Docs. 840, 872, 971). The City petitions that Interstate pay the following costs totaling $6,747.07: (1) $48.25 for witness/mileage fees; (2) $2,218.33 for court reporter/transcript costs; (3) $615.20 for attorney travel costs; (4) $247.79 for commercial copying costs; and (5) $3,617.50 for internal copying and binding costs. (Docs. 839, 873). In addition, the City seeks a total of $3,130,168.42 from both American Safety and Interstate in financing costs associated with the expense of securing funds to satisfy the *Dominguez* judgment. The court considers each request in turn.

### 1. Witness Appearance and Mileage Fees

The City seeks to recover appearance and mileage fees for certain witnesses to attend depositions in this case. Under 28 U.S.C. § 1920(3), recovery of fees and disbursements for witnesses is allowed, however the recoverable witness fee is limited to $40 per day plus travel expenses or mileage for attendance at court or a deposition. *See* 28 U.S.C. § 1821*; see also Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D. Ill. 2007) (citing 28 U.S.C. § 1821).

From American Safety, the City seeks to recover $1,108.76 in witness appearance and mileage fees it paid to two former American Safety employees, Harold Berezin and

Peter Hildebrand, to appear for their depositions. (Doc. 840 at 5). This amount consists of $54.38 in mileage costs for each of the two witnesses, plus a $500 "appearance fee" the City paid to each of the witnesses. (Doc. 840 at Exh. 3). The City asserts that it should be awarded the $500 fees since the witnesses demanded fees in this amount and at least one of them refused to be deposed unless he received it. (Doc. 971 at 12). But the City cites no legal authority to support its position, and the statute is clear on this point. The City is not entitled to recover appearance fees it paid to Mr. Berezin and Mr. Hildebrand beyond the $40 per witness authorized by the statute. *See* 28 U.S.C. § 1821. Accordingly, the Court reduces the requested award by $920 and taxes costs for witness appearance and mileage fees in favor of the City and against American Safety in the amount of $188.76.

From Interstate, the City seeks to recover $48.25 in witness appearance and mileage fees for the deposition of former Interstate employee Terry Donahoe. (Doc. 839 at 5, Exh. B at ¶ 12). Although the documentation provided by the City does not specify the breakdown of costs, Interstate does not object and presumably the expense consists of the $40 appearance fee authorized by statute plus $8.25 for mileage. *See* 28 U.S.C. § 1821. Accordingly, the Court taxes costs for witness appearance and mileage fees in favor of the City and against Interstate in the amount of $48.25.

## 2. Deposition and Hearing Transcript Costs

The City also seeks to recover its expenses for obtaining transcripts of certain depositions and court hearings. Section 1920(2) allows recovery of fees for "transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Local Rule 54.1 further elaborates that the costs of such transcripts "shall not exceed the regular copy rate as

established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." L.R. 54.1(b). For ordinary transcripts, the rate is $3.65 per page for an original transcript and $0.90 for the first copy to each party. *See* Maximum Transcript Rates, http://www.ilnd.uscourts.gov/clerks_office/CrtReporter/trnscrpt.htm (last viewed Dec. 15, 2011). The local rule also specifies that only the cost of the original and one copy where needed shall be allowed. (*Id.*)

### a.  American Safety

From American Safety, the City seeks to recover transcript costs for the depositions of certain City and American Safety witnesses and for two court hearings. The City initially sought $3,658.26 in court reporter and transcript costs from American Safety (Doc. 840 at 5); however, in response to American Safety's objections it subsequently reduced its request to $1,981.33 for depositions and $24.19 for hearings. (Doc. 971 at 12-15). The City revised the amounts it sought for transcripts such that they no longer exceed the maximum rates per page allowed by the Judicial Conference. In addition, the City withdrew certain additional costs to which American Safety objected, including court reporter attendance fees and archiving, diskette, and delivery charges, although it kept a partial court reporter attendance fee for the Fisher deposition and it included $15 fees for condensed transcripts for the Berezin and Hildebrand depositions. The revised breakdown of the amounts sought for each transcript is as follows: Bob D'Olympio ($609.55), Linda Ford ($51.66), Marianne Veltri ($44.28), Jean Fisher ($748.25), Harold Berezin ($105.90), Peter Hildebrand ($158.10), Michael Noonan ($65.52), William Anderson ($79.47), Steve Pearson ($34.65), and Paul Hendley ($83.95). (Doc. 971 at Exh. H). In its cost

6

calculations, the City attributed to American Safety the full amount of the D'Olympio, Fisher, Berezin, and Hildebrand depositions, but only 20% of the six other depositions.

As a threshold issue, American Safety objects to recovery of any portion of the transcript costs for the Pearson, Anderson, and Hendley depositions on the ground that those transcripts were not utilized in the summary judgment briefs and therefore were not necessarily "obtained for use in the case" as the statute requires. The fact that a particular deposition is not used as evidence is not determinative of whether the deposition transcript costs may be recovered. Instead courts have focused on whether the deposition was reasonably necessary to the case. *State of Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 867 (7th Cir. 1981); *Fagbemi v. Spatz*, No. 08 C 3736, 2010 WL 3522946, *4 (N.D. Ill. Sep. 2, 2010) ("Expenses related to depositions, including transcript costs, are recoverable even if the depositions are not used as evidence at trial or in support of a motion for summary judgment as long as the prevailing party shows that the depositions were 'reasonably necessary' to the case."). "The determination of necessity must be made in light of facts known at the time of the deposition." *Gallagher v. Gallagher*, No. 07 CV 4196, 2010 WL 2610192, *3 (N.D. Ill. June 24, 2010) (quoting *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991)). In its objections, American Safety does not argue that the depositions of these three witnesses were not reasonably necessary to the case, but rather relies solely on the fact that the depositions were not used in the summary judgment briefs. The City, in reply, emphasizes that former American Safety claims adjustors Berezin and Hildebrand were integrally involved in the handling of the City's insurance claim, including the coverage determination which is at the heart of this declaratory action. (Doc. 971 at 15). Regarding the deposition of police officer Paul Hendley, a co-defendant

7

in the underlying *Dominguez* case, the City asserts that his deposition was necessary since American Safety and other insurers "claimed certain policy defenses relating to Hendley's alleged conduct in the *Dominguez* investigation and arrest." (*Id.*) These facts are sufficient to establish that at the time the depositions were taken, the City appropriately determined that Berezin, Hildebrand, and Hendley's testimony was reasonably necessary to the litigation.

Having concluded that transcript costs associated with each of the ten depositions are recoverable at least in part, the Court now addresses whether certain other costs associated with the City's transcript requests are recoverable. First, the City seeks to recover $41.75 of the $250 court reporter appearance fee for the Fisher deposition, although its cost calculations do not appear to include the $41.75 in the total amount of $748.25 it seeks from American Safety based on a 205-page transcript at the maximum rate of $3.65 per page. (Doc. 971 at Exh. H). The City cites *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998), for the proposition that this Court may tax costs for fixed court reporter appearance fees. But this Court is persuaded by the reasoning of subsequent cases declining to exercise such discretion where a court reporter fee pushes the overall cost of the transcript beyond the maximum ordinary transcript rates established by the Judicial Conference. *See Higbee v. Sentry Ins. Co.*, No. 97 C 1349, 2004 WL 1323633, *2 (N.D. Ill. June 11, 2004); *Rogers v. City of Chicago*, No. 00 C 2227, 2002 WL 423723, *4 (N.D. Ill. Mar. 15, 2002). Here, the City calculated that the Fisher transcript was charged at a rate of $4.26 per page, but reduced it to the Judicial Conference rate of $3.65 per page in its revised request. (Doc. 971 at Exh. H). Since the amount the City seeks to recover for the Fisher transcript is already at the maximum allowable amount, no additional

8

costs for the court reporter appearance fee will be allowed; however, there is no need to reduce the amount requested because the City did not include the $41.75 fee in its calculations in any event.

Next, the Court considers whether to tax the court reporter exhibit reproduction costs the City seeks to recover for the Anderson and Pearson transcripts. Specifically, the City requests a 20% prorated portion of the $184.05 charge for the Anderson exhibits and the $85.95 charge for the Pearson exhibits. These costs are in addition to the maximum allowable amount the City seeks based on the cost per page of the transcripts. (Doc. 971 at Exh. H). Costs for exhibit reproduction are recoverable if the prevailing party establishes that "the exhibits were essential to understanding an issue in the case." *Camp v. Centrue Bank*, No. 08 C 4020, 2011 WL 2581751, *2 (N.D. Ill. June 28, 2011) (citing *Harkins v. Riverboat Servs., Inc.*, 286 F.Supp.2d 976, 980 (N.D. Ill. 2003)). Here, the City asserts that an award is appropriate given that this case encompassed over 15 depositions, that there were at one time seven parties to the action, and that numerous motions were filed and extensive discovery exchanged while the case was litigated over a period of several years. (Doc. 971 at 14). While inclusion of the exhibits with the transcript may have been convenient given the number of depositions taken, the City has not shown that the exhibit copies were essential. *See Boyle v. Torres*, No. 09 C 1080, 2011 WL 899720, *2 (N.D. Ill. Mar. 15, 2011) (declining to award charges for exhibit costs where prevailing parties did not show that exhibits "were anything other than extra copies of documents already within their possession"); *Menasha Corp. v. News America Marketing Instore, Inc.*, No. 00 C 1895, 2003 WL 21788989, * 2 (N.D. Ill. July 31, 2003). Accordingly, the Court reduces the

award by $36.81 for the prorated cost of the Anderson exhibits and by $17.19 for the prorated cost of the Pearson exhibits.

Next, the Court considers whether to award the City costs for condensed transcripts where regular copies of those transcripts also were purchased. Specifically, the City seeks to recover a $15 per transcript fee for condensed transcripts of the Berezin and Hildebrand depositions, in addition to the maximum allowable fee it seeks to recover for obtaining copies of each transcript. (Doc. 971 at Exh. H). The City argues that the condensed transcript fees are recoverable costs incidental to the taking of a deposition. (Doc. 971 at 13, citing *Alsaras v. Dominick's Finer Foods, Inc.*, No. 99 C 4226, 2001 WL 1117275, *2 (N.D. Ill. Sep. 19, 2001)). But condensed transcript costs are generally not taxable "because they are not necessary to litigation and are merely for the convenience of the attorney." *Garcia v. City of Chicago*, No. 08 C 5354, 2010 WL 4134996, *1 (N.D. Ill. Oct. 12, 2010); *see also Ochana v. Flores*, 206 F.Supp.2d 941, 945 (N.D. Ill 2002) ("Costs for condensed transcripts are not recoverable."). The City presents no reason to conclude that the condensed transcripts in this instance were purchased for any purpose other than counsel's convenience. Thus, the Court reduces the award by $30, the cost of the two condensed transcripts.

Finally, the Court considers whether to award the City costs for the transcripts of two court hearings, which took place on February 27, 2008 and December 13, 2010. American Safety argues that the request should be denied because the City failed to identify the need for the transcripts. In its reply, the City clarified that the first transcript, concerning its motion to amend its counterclaim to join additional parties, was necessarily obtained because the minute order granting the motion provided no detail; thus it needed the

transcript to insure it complied fully with the district judge's ruling set forth in open court. As to the second transcript concerning the City's motion before this Court to compel American Safety to produce documents on its privilege log, the City clarified that it needed the transcript to attach to the objections it filed with the district judge to this Court's denial of the motion. These are reasonable justifications for the necessity of obtaining the transcripts. The Court taxes costs at the requested amount of 20% of the cost of $14.70 for the first transcript and $106.25 for the second transcript. Accordingly, the Court awards the City $24.19 for hearing transcripts, consisting of $2.94 for the first transcript and $21.25 for the second transcript.

For these reasons, the Court taxes costs for deposition and hearing transcripts in favor of the City of Waukegan and against American Safety in the amount of $1,921.52.

### b.    Interstate Indemnity

From Interstate, the City seeks to recover $2,218.33 in transcript costs for the depositions of certain City and Interstate witnesses and for two court hearings. (Doc. 839 at 5). The City provides no breakdown of the percentage it seeks to recover from Interstate for the cost of each transcript, but simply attaches invoices for the following transcripts: Linda Ford ($761.85), Marianne Veltri ($657.30), Scott Byrne ($891.10), Terry Donahoe ($618.75), Michael Noonan ($1,090), and Paul Hendley ($547.50). (*Id.* at Exh. 4). While Interstate makes no objections, clearly the City cannot recover the full amount of the Ford, Veltri, Noonan, and Hendley transcripts since it sought and will be granted 20% of appropriate costs for those transcripts from American Safety. The Court therefore taxes costs against Interstate for those four transcripts at the same 20% prorated amount taxed

against American Safety, which equates to $51.66 for Ford, $44.28 for Veltri, $65.52 for Noonan, and $83.95 for Hendley. (Doc. 971 at Exh. H).

As for Scott Byrne and Terry Donahoe, they are current or former Interstate employees (Doc. 839 at Exh. B, ¶ 9), so any costs to be taxed for these transcripts are taxable against Interstate in the full amount. But, for the same reasons noted above as to American Safety, certain costs in the invoices are not recoverable, including court reporter attendance fees and exhibit reproduction costs, and the total transcript cost cannot exceed the maximum rate per page specified by the Judicial Conference. Thus, for the Byrne transcript, the City is entitled to the $683.10 charged for 198 pages, which equates to a permissible rate of $3.45 per page. (*Id.* at Exh. 4). However, the remaining fees of $200 for "E-transcript and Scrunch" and $8 for handling and delivery are allowed only in an amount to bring the total cost up to the maximum Judicial Conference rate of $3.65 per page, or $722.70. The invoice for the Donahoe transcript charges $551.25 for 147 pages, which equates to a rate of $3.75 per page. (*Id.* at Exh. 4). Therefore, the taxable amount is reduced to $3.65 per page, or $536.55. The additional charges for the reporter attendance fee, exhibits, and postage and handling are not taxed as costs for the reasons previously discussed. Accordingly, the Court taxes costs against Interstate in the amount of $1,504.66 for the six deposition transcripts identified above.

Finally, the City requests costs from Interstate for transcripts of the same two court hearings of February 27, 2008 and December 13, 2010 discussed above as to American Safety. For the same reasons set forth above, the Court concludes that the transcript was necessarily obtained for the status conference of February 27, 2008. However, the request

for costs is denied as to the December 13, 2010 hearing because that hearing concerned a motion to compel documents from American Safety only and not from Interstate. Accordingly, the Court taxes costs against Interstate for hearing transcripts in the amount of $2.94, comprising 20% of the cost of $14.70 for the February 27, 2008 hearing transcript.

For these reasons, the Court taxes costs for deposition and hearing transcripts in favor of the City of Waukegan and against Interstate in the amount of $1,507.60.

### 3.    Attorney Travel Costs

The City seeks to recover $306.20 in travel costs incurred by its attorney to take the depositions of two former American Safety employees in Atlanta, Georgia where American Safety maintains its corporate headquarters. (Doc. 840 at 5-6). From Interstate, the City seeks to recover $615.20 in costs for its attorney to travel to Denver, Colorado for the deposition of former Interstate employee Terry Donahoe. (Doc. 839 at 4). But 28 U.S.C. § 1920 does not provide for recovery of attorney travel expenses. *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) and *Collins v. Gorman*, 96 F.3d 1057 (7th Cir. 1996)); *see also Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, No. 03 C 6508, 2008 WL 4534162, *2 (N.D. Ill. Oct. 3, 2008) (attorney travel is an ordinary business expense not enumerated under § 1920 and should be excluded from bill of costs). The City's reliance on *Cintas Corp. v. Perry*, 494 F.Supp.2d 907 (N.D. Ill. 2007), is misplaced, as attorney travel costs were awarded in that case only because an employment agreement between the parties entitled the employee to such costs "regardless of the

restrictions placed on costs by the federal rules." *Id.* at 909. Accordingly, the City's attorney travel expenses are not taxable as costs under Rule 54(d)(1).[1]

### 4. Copying Costs

The City also seeks to recover costs it incurred for copying, binding and tabbing various court filings and other documents. Section 1920(4) allows recovery of fees "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see also M.T. Bonk Co.*, 945 F.2d at 1410. The party seeking to recover costs "[i]s not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," but rather "[i]s required to provide the best breakdown obtainable from retained records" in order to make the required showing of necessity. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble*, 924 F.2d 633, 643 (7th Cir. 1991); *see also Brown v. County of Cook*, No. 06 C 617, 2011 WL 4007333, *4 (N.D. Ill. Sep. 8, 2011); *Glenayre Electronics, Inc. v. Jackson*, No. 02 C 0256, 2003 WL 21947112, *3 (N.D. Ill. Aug. 11, 2003). Namely, the party must show "the nature of the documents copied, including how they were used or intended to be used in the case." *Glenayre Electronics*, No. 02 C 0256, 2003 WL 21947112, *3; *see also Brown*, No. 06 C 617, 2011 WL 4007333, *4. The cost of copies made solely for the "convenience" of the prevailing party's attorneys is not recoverable. *See Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994); *Brown*, No. 06 C 617, 2011 WL 4007333, *4.

---

[1] Although *Calderon* notes that such expenses may be recoverable as attorneys' fees, 112 F.3d at 276, this presumably refers to the attorneys' fees provision under Rule 54(d)(2). While the City seeks attorneys' fees from American Safety, as addressed in Section B below, that request is made pursuant to the district judge's order under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, not Rule 54(d)(2).

### a.    Commercial Copying Costs

The City first seeks to recover $247.79 each from American Safety and Interstate for commercial copying costs incurred for copying, binding, and tabbing its separate motions for summary judgment against each of the two insurers.  (Doc. 840 at Exh. B, ¶ 15; Doc. 839 at 6, Exh. B, ¶ 15).  The amount the City seeks from each is a 20% prorated portion of the City's total commercial copying costs of $1,238.95 for 9,782 pages, bound and tabbed.  (Doc. 840 at Exh. 6; Doc. 839 at Exh. 6).  Interstate does not object, while American Safety objects on the basis that the City failed to explain why it is entitled to costs for 9,782 pages of copies and 60 bound items when the summary judgment filing was under 2,000 pages and was filed and served electronically.  (Doc. 903 at 7).  In reply, the City asserts that it seeks to recover from American Safety only for three bound and tabbed copies of the filing and related exhibits — a courtesy copy for the district judge pursuant to her case management procedures and two copies for use by the City attorneys "who were simultaneously filing motions for summary judgment and supporting materials against 4 other insurers totaling thousands of pages of documentation."  (Doc. 971 at 12).

It is well-established that the cost of copies made solely for the attorneys' convenience is not recoverable.  *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Haroco, Inc.*, 38 F.3d at 1441.  This principle does not bar recovery for *any* hard copies for the attorneys' use, just excessive copies.  *See Kulumani*, 224 F.3d at 685 (finding the cost of two copies of every court filing to be recoverable, but remanding to the district judge to determine whether there was justification for the five sets of copies for which costs were taxed); *Haroco, Inc.*, 38 F.3d at 1441 (affirming district court's determination that expense of only two sets of copies of discovery documents and

pleadings were taxable as costs and third set was non-recoverable since it was for attorney convenience); *Boyle v. Torres*, No. 09 C 1080, 2011 WL 899720, *2 (N.D. Ill. Mar. 15, 2011) (holding that "it is reasonable for a party to have a complete copy of what is filed with the court as part of the record"); *see also Barton v. Zimmer, Inc.*, No. 1:06-CV-208-TS, 2010 WL 3168403, *3 (N.D. Ind. Aug. 10, 2010) (holding that the "attorney convenience" principle bars recovery for "duplicate copies of documents simply to accommodate multiple lawyers," but allows for the printing of a copy "of a document that is otherwise only viewable by electronic means.").

In this case, the summary judgment filings are clearly related to the litigation, and the necessity of providing one courtesy copy of each filing to the district judge also is clear given her standing order. In light of the specific circumstances here, the City also has established the necessity of retaining two copies of each filing for its own use. The City's stated justification — that two City attorneys were preparing simultaneous filings and that the litigation involved "massive" amounts of documentation (Doc. 971 at 12) — is reasonable given that the City filed summary judgment motions against other parties and also responded to summary judgment motions during this same time period, and the volume of these filings was sizeable. Given the length of the summary judgment filings against Interstate and American Safety, hard copies were necessary for the two City attorneys who were simultaneously preparing various documents requiring them to reference and make use of their summary judgment submissions. American Safety's objection based on the fact that the documents were electronically filed and served does not prevent the City from recovering these costs. *See Perry v. City of Chicago*, No. 08 C 4730, 2011 WL 612342, *2 (N.D. Ill. Feb. 15, 2011) (electronic filing does not eliminate the

16

ability of a prevailing party to recover copying costs for court filings).  Therefore, the Court concludes that a total of three sets of copies were necessary for each summary judgment filing — one for the district judge and two for the City's attorneys.

Accordingly, the Court taxes costs for commercial copying against American Safety and Interstate in the amount of $247.79 each.

### b.    Internal Copying Costs

The City next seeks to recover internal copying and binding costs from both American Safety and Interstate.  Specifically, the City requests $4,040.34 from American Safety, consisting of $3,564.54 identified in the amended bill of costs and an additional $475.80 identified in the supplemental bill of costs.  (Doc. 840 at Exh. B, ¶ 18 & Exh. 7; Doc. 872 at Exh. B, ¶ 13 & Exh. 2).  The City also seeks to recover $2,915.04 from Interstate, consisting of $2,658.24 identified in the amended bill of costs and an additional $256.80 identified in the supplemental bill of costs.  (Doc. 839 at Exh. B, ¶ 17 & Exh. 7; Doc. 873 at Exh. B, ¶ 14 & Exh. 2).  The amount the City seeks per document ranges from 20% to 100% of the total cost, although no more than 50% is requested where costs are sought from both American Safety and Interstate.  The copies were made at the rate of $0.20 per page, which falls within the reasonable range, albeit at the highest end.  *See LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, *7 (N.D. Ill. Oct. 20, 2011); *Chicago United Indus., Ltd. v. City of Chicago*, No. 05 C 5011, 2011 WL 4383007, *3 (N.D. Ill. Sep. 20, 2011).  Interstate makes no objections; American Safety's only objection is to the Ford and Noonan deposition exhibits on the ground that the City fails to identify how many copies were ordered.  (Doc. 903 at 6).  However, the Court is unable to locate any such exhibits in the two itemized lists of copied items provided by the

City, nor do the lists include any document for which the number of copies is not specified. (Doc. 840, Exh. 7; Doc. 872, Exh. B).

Of the documents enumerated by the City, 93 of the American Safety documents and 54[2] of the Interstate documents are court filings for which the City seeks to recover the cost of three copies. (*Id.*; Doc. 839 at Exh. 7; Doc. 873 at Exh. 2) As discussed above, the cost of one courtesy copy for the court and one copy for the City's attorneys are taxable as costs. However, unlike with the commercial copying costs discussed above, the City has proffered no justification for the necessity of retaining a second hard copy of each of these court filings for its attorneys. While the City relies on *Perry*, No. 08 C 4730, 2011 WL 612342, *2, for the proposition that it can recover three sets of documents (Doc. 840 at 6), *Perry* states only that "[g]enerally, recovery is *limited* to three sets of copies per document." *See id.* (emphasis added). But the prevailing party is not automatically entitled to three sets; it still must establish that the copies were necessary, *see id.,* which the City has not done here. Accordingly, costs are taxed against American Safety for two copies of the 93 court filings for a total of $1,539.64 and against Interstate for two copies of the 54 court filings for a total of $783.60.

Of the remaining items for which the City seeks costs, only two are taxable. The taxable items comprise a portion of two copies of the City's lengthy Rule 26(a) initial disclosures at a cost of $280 per insurer and one set of assorted documents for Magistrate Judge Cole pursuant to his order at a cost of $87.52 per insurer. (Doc. 840 at Exh. 7; Doc. 839 at Exh. 7). The other items — consisting of ten sets each of various deposition

---

[2]     In reaching this figure, the Court omitted a duplicate entry for docket number 273. (Doc. 839, Exh. 7 at 1, 2).

exhibits (for the D'Olympio and Fisher depositions as to American Safety and the Donahoe and Byrne depositions as to Interstate), and two copies per insurer of the *Dominguez* civil action transcript for an unspecified purpose — appear to be for counsel's convenience, and the City cites no legal authority or factual explanation for why such items should be taxable as costs. *See, e.g., Boyle*, No. 09 C 1080, 2011 WL 899720, *2 (in the context of deposition transcripts, declining to tax cost of exhibits where prevailing parties did not show they "were anything other than extra copies of documents already within their possession"). Accordingly, no costs are recoverable for the copies of the deposition exhibits and *Dominguez* transcripts, but costs are taxed against American Safety and Interstate in the amount of $367.52 each for the Rule 26(a) disclosures and documents provided to Magistrate Judge Cole.

Accordingly, the Court taxes costs for internal copying against American Safety in the amount of $1,907.16 and against Interstate in the amount of $1,151.12.

### c.    Cost Allowance

Finally, the City seeks to recover $8,611.27 from American Safety for a so-called "cost allowance."  In her affidavit, City attorney Paulette Petretti explains that her law firm does not account for copying costs separately, but rather "bills each client with a cost allowance of 5% of the fees billed" to cover the costs of "copying, overtime scheduled and necessitated by deadline requirements, the use of computer equipment, mainframes, facsimile transmissions, long distance telephone calls, cabs to and from court and customary postage."  (Doc. 840, Exh. B. at ¶ 16).  Ms. Petretti goes on to explain that the City incurred $9,719.41 in costs "for services related to litigation of claims against American Safety," of which "$3,564.54 were for internal copying charges" and the "remainder of the

cost allowance was for administrative expenses including tabbing, binding, telephone, postage, messenger and other administrative expenses." (*Id.* at ¶ 17). The cost allowance is summarized in a spreadsheet that states only dates, invoice numbers, and amounts sought from ASI, totaling $9,719.41, without any indication of the nature or purpose of the work performed or services provided. (*Id.* at Exh. 2.) In its supplemental bill of costs, the City seeks an additional $2,932.20 for a "cost allowance [that] was for administrative expenses including tabbing, binding, telephone, postage, messenger and other administrative expenses." (Doc. 872 at Exh. B. ¶ 13). The City attached a similarly unhelpful spreadsheet identifying those costs without specifying the work performed or services provided. (*Id.* at Exh. 1).

The City cites no legal authority in support of its request to tax costs for expenses such as phone and fax charges, postage, messenger service, and unspecified administrative expenses and, indeed, there is none. *See Alexander v. CIT Tech. Fin. Servs., Inc.*, 222 F.Supp.2d 1087, 1092 (N.D. Ill. 2002) (declining to tax mail and postage costs because such costs "have consistently been 'disallowed on the grounds that these expenses are generally considered overhead, or part of the cost of operating a law firm.'") (quoting *Moriarty v. Glueckert Funeral Home, Ltd.*, No. 95 C 2848, 1999 WL 162792, at *2 (N.D. Ill. Dec. 3, 1999) and *Downes v. Volkswagen of Am.*, 41 F.3d 1132, 1144 (7th Cir. 1994)). In addition, the plain language of the statute clearly does not encompass these costs. *See* 28 U.S.C. § 1920. While the cost of binding and tabbing certain documents may be encompassed by § 1920(4), the City's failure to identify what documents were bound and tabbed and the necessity of those documents to the case makes it impossible for the Court to determine whether these costs were reasonable or, indeed, whether they

20

were actually incurred. *See Cintas Corp*, 494 F.Supp.2d at 910 (declining to tax miscellaneous administrative charges, including binding, where prevailing party provided "no basis from which to determine whether these costs are reasonable and whether they were actually incurred"). Accordingly, no costs will be taxed for expenses that fall within the so-called cost allowance.

In summary, for the reasons set forth above, the Court taxes costs for commercial and internal copying against American Safety in the amount of $2,154.95 and against Interstate in the amount of $1,398.91.

### 5.      Bond Financing Costs

Finally, the City seeks to recover from both American Safety and Interstate a total of $3,130,168.42 in financing costs for the *Dominguez* judgment, which it satisfied in full. (Doc. 811 at 14.) The City states that it was required to secure financing in order to satisfy the $9,063,000 judgment, interest, fees, and costs in the underlying *Dominguez* civil suit which gave rise to the instant insurance coverage dispute. (Docs. 839, 840, 872 & 873 at 4). The financing consisted of four components: (1) a letter of credit; (2) a bond anticipation note; (3) a general obligation bond; and (4) defeasance. (Docs. 839, 840, 872 & 873 at Exh. A, ¶ 6). In its initial brief, the City argues that these financing costs are taxable in this matter pursuant to the district court's Local Rule 54.1(c) concerning taxation of bond premium costs. The City relies upon *Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, No. 99 C 4573, 2003 WL 22953336 (N.D. Ill. Dec. 15, 2003), which the City characterizes as "finding bond premiums taxable as costs pursuant to Local Rule 54.1(c)." (Doc. 872 at 4; Doc. 873 at 5). In its reply, the City also argues that Federal Rule of Appellate Procedure 39(e) provides a basis for recovering its financing costs.

Both American Safety and Interstate object to the taxing of any costs associated with the City's financing of the *Dominguez* judgment. They argue that a district court may not tax costs under Rule 54(d) unless a federal statute authorizes it to do so and here, they assert, the relevant statute, 28 U.S.C. § 1920, does not provide for taxing costs of municipal bond premiums obtained prior to judgment. They further argue that Local Rule 54.1(c) and Federal Rule of Appellate Procedure 39(e) are inapplicable because the bond at issue is not a supersedeas bond and, in any event, the financing costs arose out of the *Dominguez* litigation rather than the insurance coverage litigation currently before this Court. American Safety and Interstate correctly characterize the law on this issue and the City's financing costs are not taxable in this matter.

It is well-established that "a district court may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-443, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) and *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000)). The relevant statute here, 28 U.S.C. § 1920, lists the costs that are taxable under Rule 54(d). As noted previously, those costs comprise: (1) fees of the clerk and marshal, (2) fees for transcripts necessarily obtained for use in the case, (3) fees and disbursements for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920; *see also Republic Tobacco*, 481 F.3d at 447. It cannot be disputed that § 1920 includes no mention of costs associated with obtaining or financing funds to satisfy a judgment, and there are

no cases supporting the argument that a district court may extend the reach of § 1920 to encompass costs other than those it enumerates.

Perhaps for this reason, the City argues instead that the district court's Local Rule 54.1(c), concerning taxation of bond premium costs, confers the basis for recovery here. Local Rule 54.1(c) states as follows:

> (c) Bond Premiums.  If costs shall be awarded by the court to either or any party then the reasonable premiums or expenses paid on all bonds or stipulations or other security given by the party in that suit shall be taxed as part of the costs of that party.

But the City's reliance on the local rule is misplaced.  The Supreme Court in *Crawford* soundly rejected the argument that § 1920, by listing expenses a district court "may" tax as costs, does not preclude a district court from taxing costs above and beyond those listed in the statute.  *Crawford Fitting Co.*, 482 U.S. at 441.  Rather, the *Crawford* Court made clear that "Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)," and construing Rule 54(d) as setting only a discretionary floor, but no ceiling, "would render any of these specific statutory provisions entirely without meaning."  *Id.* at 441-442.  The Seventh Circuit expressly adopted this holding in *Republic Tobacco* where, in light of *Crawford*, it reversed the district court's award of costs associated with securing a judgment because such costs were not listed in § 1920.  *Republic Tobacco*, 481 F.3d at 447.

The lone case the City cites for support in its initial brief is *Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, No. 99 C 4573, 2003 WL 22953336 (N.D. Ill. Dec. 15, 2003), which the City characterizes as "finding bond premiums taxable as costs pursuant to Local Rule 54.1(c)."  (Doc. 872 at 4; Doc. 873 at 5).  *Sphere Drake* is factually

distinguishable, however, since it did not involve financing to satisfy a judgment, but rather entailed a security bond posted during the litigation to cover potential liability. *See id.* at *1. Also, unlike here, the bond in *Sphere Drake* was posted pursuant to an agreement of the parties and in conformance with a state statute, 215 ILCS 5/123(5). *See id.* Significantly, after it prevailed, Sphere Drake filed a bill of costs to recover the premiums it paid to maintain the bond during the pendency of the litigation, including the appeal. *Id.* at *2, 3. Thus, the bond in *Sphere Drake* appears to fall within the purview of Rule 39 of the Federal Rules of Appellate Procedure, which allows a district court to tax premiums paid for a bond posted to secure a judgment pending appeal. *See* Fed. R. App. P. 39(e). In any event, *Sphere Drake* predates the Seventh Circuit's opinion in *Republic Tobacco*, which clarified once and for all that district courts may not tax costs beyond those authorized by statute. *See Republic Tobacco*, 481 F.3d at 447. Thus, Local Rule 54.1(c) alone cannot expand the reach of § 1920. *Id.*; *see also In re Griffin Trading Co., Inc.*, 424 B.R. 431, 432-433 (N.D. Ill. 2010) (declining to award costs of maintaining letters of credit under Bankruptcy Court's L.R. 7054-1(C), which is nearly identical to this court's L.R. 54.1(c), because premiums paid on security are not taxable under § 1920). Accordingly, the City's financing costs are not taxable under Federal Rule of Civil Procedure 54(d) or Local Rule 54.1(c).

In an argument raised for the first time on reply, the City next attempts to analogize the costs sought in this case to supersedeas bond costs arising under Rule 39 of the Federal Rules of Appellate Procedure, contending that Rule 39 gives this Court discretion to award the requested financing costs. Interstate and American Safety assert that the City waived this argument by failing to raise it earlier. As a general matter, an argument raised

for the first time in a reply brief is forfeited.  *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir.

2009) (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir.

2003)).  The City contends that its reply simply "fleshed out" its arguments concerning

*Republic Tobacco* in response to arguments raised by Interstate, however Interstate never

mentioned Rule 39 in its response.  The Court is disappointed that the City raised its Rule

39 argument for the first time at that late stage of the briefing because it necessitated

multiple additional briefs, requiring the parties and this Court to expend further resources.

But because the Court allowed the filing of sur-replies and sur-sur-replies, in which the

parties addressed this issue, the Rule 39 argument was thoroughly briefed by all parties.

Accordingly, any harm to American Safety and Interstate from the City's late raising of the

argument was mitigated, and the Court will consider the Rule 39 argument.

While it is understandable that the City attempts to analogize this case to Rule 39,

given that Rule 39 appears to be the only authority upon which bond costs may be taxed,

such an argument simply is not supported by the facts here, where the bond at issue was

not a supersedeas bond.[3]  The federal rules allow for an appellant to obtain a stay of a

judgment pending appeal by giving a supersedeas bond.  Fed. R. Civ. P. 62(d).  Rule 39(e)

of the Federal Rules of Appellate Procedure expressly provides for taxing costs on

supersedeas bonds in the district court:

> (e) Costs on Appeal Taxable in the District Court.  The following costs on
> appeal are taxable in the district court for the benefit of the party entitled to
> costs under this rule:
> (1) the preparation and transmission of the record;
> (2) the reporter's transcript, if needed to determine the appeal;

---

[3]      A supersedeas bond is an "appellant's bond to stay execution on a judgment
during the pendency of the appeal."  BLACK'S LAW DICTIONARY 202 (9th ed. 2009).

> (3) *premiums paid for a supersedeas bond or other bond to preserve rights pending appeal*; and
> (4) the fee for filing the notice of appeal.

Fed. R. App. P. 39(e) (emphasis added). Notably, while § 1920 precludes an award of bond premiums under Federal Rule of Civil Procedure 54(d) for the reasons discussed above, it does not preclude such an award under Federal Rule of Appellate Procedure 39(e). As the Seventh Circuit observed in *Republic Tobacco*, § 1920 itself does not include a category for bond premiums, although the Advisory Committee Notes to Rule 39 indicate that § 1920 authorizes courts to award costs under Rule 39. *Republic Tobacco*, 481 F.3d at 448. Significantly, however, "Congress approved Rule 39 after it passed § 1920, and Rule 39 specifically provides that a district court may award 'premiums paid for a supersedeas bond or other bond to preserve rights pending appeal.'" *Id.* (quoting Fed. R. App. P. 39(e)). "Where the Federal Rules conflict with a 'procedure provided in an earlier act of Congress,' the Federal Rules control." *Id.* (quoting *Am. Fed'n of Musicians v. Stein*, 213 F.2d 679, 686 (6th Cir. 1954)). Thus, Rule 39(e) permits district courts to tax supersedeas bond premiums because the rule itself expressly authorizes such costs. *Id.* In contrast, Rule 54(d) does not identify specific costs the district court may tax and therefore is limited by § 1920. *Id.*

Rule 39 is of no assistance to the City in this case because the costs it seeks to recover are outside those identified as taxable under that rule. The rule is expressly confined to "a supersedeas bond or other bond to preserve rights pending appeal." Fed. R. App. P. 39(e)(3). Here, the City does not seek to recover costs associated with a supersedeas bond or other instrument to secure the *Dominguez* judgment pending appeal. Rather, the City requests the costs it incurred to obtain and finance payment in

full of the judgment itself.  The City relies on *Republic Tobacco* in conclusory fashion, without explaining how *Republic Tobacco*'s holding concerning application of Rule 39 applies to this case, in which the financing was unrelated to any stay of judgment pending appeal.  Indeed, the City refers generally to "securing" a judgment as if that were the issue here, which it is not.  The City fails entirely to distinguish between bonds to secure a judgment pending appeal, which fall under Rule 39(e), and bonds to satisfy a judgment, which do not.

The City also argues that its financing costs, even though not in the form of a supersedeas bond, are taxable because "borrowing costs incurred in lieu of a premium for a supersedeas bond are recoverable costs."  (Doc. 970 at 6, citing *Republic Tobacco*, 481 F.3d at 450.)  But this misses the point.  While the Seventh Circuit in *Republic Tobacco* did, indeed, find that it was not an abuse of discretion for the district court to tax costs under Rule 39(e) associated with borrowing money in lieu of obtaining a bond, those costs still arose in the context of securing a judgment pending appeal, thus bringing it within the purview of Rule 39(e).  *See Republic Tobacco*, 481 F.3d at 450.  Here, as discussed above, it is not the form of the City's financing, but rather the purpose of it, that takes it outside Rule 39(e) as a threshold matter.

Finally, the City makes much of the fact that, had the insurers satisfied their obligations under the policies, the City would not have been forced to pay the judgment in the first place, and therefore would not have incurred the financing costs it now seeks to recover.  While this may be true, and while one may reasonably argue that shifting these costs to the insurers is the equitable outcome, Rule 39 simply is not a proper mechanism for accomplishing this.  Rule 39(e) could not be more clear — it applies to supersedeas

bonds or other bonds to preserve rights pending appeal — and the City has identified no legal authority that permits this Court to expand the rule's reach to encompass the City's financing costs for satisfying a judgment rather than securing it pending appeal.

The parties devote some discussion in their briefs to whether the City might have recovered these costs through other means, such as in the underlying *Dominguez* suit or as an item of damages in this case. The City did not pursue those avenues, however, and this Court will not analyze whether those avenues were viable or appropriate as it has no impact on the issue before the Court now. The only question before this Court is whether the City's costs for obtaining and financing the funds to satisfy the *Dominguez* judgment are taxable as costs in this matter. For the reasons set forth above, they are not.

## B.    The Fee Petition

In addition to its Bill of Costs, the City of Waukegan filed a Fee Petition pursuant to the district judge's Opinion and Order finding bad faith under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Under this provision, the City is entitled to the reasonable attorneys' fees it incurred to bring its counterclaim against American Safety because the insurer acted "unreasonably and vexatiously" in its handling of the *Dominguez* claim. (Doc. 811 at 49-52). In its initial and supplemental fee petitions, the City requests a total of $274,222.52 in attorneys' fees and costs from American Safety, consisting of the following categories: (1) $253,036.89 in attorneys' fees; (2) $10,994.62 in electronic legal research costs; and (3) $10,191.01 in expert fees. (Docs. 816, 874).

### 1.    Attorneys' Fees

The City seeks a total of $253,036.89 in attorneys' fees for approximately 1,225 hours of work performed, which it supports with affidavits from its attorney, Paulette

Petretti, and several hundred pages of invoices and other supporting documentation. (Docs. 816, 874). American Safety objects on three grounds.

### a.     General Fee Objections

First, American Safety objects generally to all attorneys' fees after May 2008 since the City's invoices from June 2008 to May 2011 do not identify the attorney who performed each task. The City replied that the invoices reflect a change in billing practices as of June 2008 to a "blended rate for partners and associates," thereby eliminating the identification of individual attorneys for each time entry. (Doc. 974 at 4). Nonetheless, the City asserts, the invoices detail the work performed, the time expended, and the amount charged (based on an hourly blended rate of $195 to $225), which is sufficient to determine the reasonableness of the fees. (*Id.* at 4, Exh. 1 at ¶ 23). American Safety does not object to the blended rates or time expended as unreasonable or the description of the work as deficient. Rather, it argues generally that identification of the attorneys who performed each task "is necessary to determine if duplicative efforts have been undertaken and to determine the reasonableness of the work performed." (Doc. 903 at 11). When the Court raised this issue in a status hearing concerning the fee petition, the City offered to supplement its invoices with the identities of attorneys. American Safety, however, declined the offer, stating that this information would not affect its objections as set forth in its response brief. (Doc. 999).

A fee petition under Section 155 should "indicate specific facts, including the services performed, by whom they were performed, the time expended and the hourly rate charged." *Estate of Price v. Universal Cas. Co.*, 334 Ill.App.3d 1010, 1012, 779 N.E.2d 384, 386 (1st Dist. 2002); *see also Kaiser v. MEPC Am. Props.*, 164 Ill.App.3d 978, 983-

984, 518 N.E.2d 424, 427 (1st Dist. 1987). In determining the reasonableness of the requested attorneys' fees, the court considers various factors including "the time and labor required, the novelty and difficulty of the issues, the skill required, the preclusion of other employment necessary to accept the case, the customary fee charged in the community, the amount of money involved in the case, the results obtained, and the attorney's reputation." *Williams v. Am. Country Ins. Co.*, 359 Ill.App.3d 128, 142, 833 N.E.2d 971, 982 (1st Dist. 2005) (citing *Mobil Oil. Corp. v. Maryland Cas. Co.*, 288 Ill.App.3d 743, 752, 681 N.E.2d 552 (1997)). The party requesting fees "always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness." *Kaiser*, 164 Ill.App.3d at 983, 518 N.E.2d at 427.

Here, the City provided several hundred pages of invoices from 2007 to 2011 consisting of dated time entries describing the task performed and identifying the time expended and amount charged. American Safety fails to provide sufficient support for its argument that the City's fees should be denied as a whole for not also identifying the attorney who performed each task. While the case law specifies that this is one of the pieces of information that should be provided — together with the services performed, time expended, and hourly rate charged — one must not lose sight of the overarching purpose behind providing such details, which is to enable the court to determine the reasonableness of the fees. *See Kaiser*, 164 Ill.App.3d at 983-984, 518 N.E.2d at 427. There is no evidence in this instance that the absence of the attorney names has any bearing on the reasonableness of the fees or the Court's ability to make a reasonableness determination. Ms. Petretti's affidavit identifies by name each attorney who worked on the matter, and provides further details concerning credentials and experience for the three

attorneys who did the bulk of the work. (Doc. 816-1 at ¶¶ 16-21). In addition, her affidavit sets forth the blended hourly rate for partners and associates, which ranges from $195 to $225, and identifies a comparable Chicago firm with commensurate rates that likewise represents municipal clients in insurance coverage matters, including providing an additional affidavit to that effect from a partner of the comparable firm. (*Id.* at ¶¶ 23, 24 & Exh. E). Because the reasonableness of the blended rate charged in this case is sufficiently documented by the City, and is unchallenged and unrebutted by any evidence, this Court sees no reason to question it. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the [prevailing party's] burden."); *Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2837589, *5 (N.D. Ill. Feb. 14, 2011) (finding no reason to question rates in attorney affidavit given opposing party's failure to object or offer contrary evidence).

In light of the reasonableness of the blended rate, the Court fails to see how having the attorney names for each time entry would allow American Safety to make arguments concerning reasonableness that it could not have made based on the information already given. American Safety argues in one conclusory sentence that the attorney information "is necessary to determine if duplicative efforts have been undertaken." (Doc. 903 at 11). But it is not clear to the Court how having the attorney names would affect American Safety's ability to identify duplicative time entries and, indeed, American Safety declined as unnecessary the City's offer to supplement its invoices with the missing attorney information. (Doc. 999). Given that the invoices contain complete descriptions of the work

performed and time expended, American Safety presumably should have been able to identify potentially duplicative time entries.  It did not do so in its brief, and it did not avail itself of the opportunity to receive the missing information that it argues provides the basis for denying the requested fees.  Accordingly, the Court declines to deny attorneys' fees based on the absence of attorney identifying information for each time entry.

### b.    Specific Fee Objections

American Safety next objects to certain specific attorney time entries because, it contends, they relate to insurance carriers other than American Safety or are unclear as to which carrier they concern.

### i.    Relevancy Objections

In Exhibit A to its response brief, American Safety enumerates 36 time entries for which it asserts relevancy objections and asserts that fees in the amount of $8,306.69 should be denied.  (Doc. 903-1).  In its reply, the City withdrew items totaling $777, but otherwise argued generally that the challenged time entries are relevant to American Safety.  (Doc. 974 at 5-7, withdrawing 903-1, ¶¶ 2, 33).

American Safety objects to multiple time entries involving the City's amended counterclaim to add additional insurance carriers as necessary parties on the ground that the amended counterclaim is unrelated to American Safety.  (Doc. 903-1, ¶¶ 1, 3, 7, 8-26).  In reply, the City argues generally that these items are relevant to American Safety because it was American Safety's conduct on the eve of the *Dominguez* trial, in refusing to defend and indemnify the City under its policy, that made this lawsuit necessary and ultimately forced the City to bring in additional parties whose rights might be affected.  (Doc. 974 at 6).  But the City cannot rely on the very dispute that gave rise to the lawsuit

as a basis for arguing that American Safety is therefore responsible for every cost that flows from the lawsuit, including the City's decision to add other insurers as parties. Notably, in its answer to the City's counterclaim, American Safety did not assert an affirmative defense that excess or additional insurance policies were in effect during the relevant time period. (Doc. 19 at 18-19). Thus, the City's addition of other insurance carriers as parties was not in response to an affirmative defense raised by American Safety. Even if it were, it is questionable whether such costs related to claims against other insurers would properly be taxed to American Safety. Accordingly, the fees related to the amended counterclaim are not recoverable from American City, and the Court therefore deducts $5,492.19 from the total amount requested by the City.

American Safety also objects to certain items related to attorney time focused on the underlying *Dominguez* case. The first category of such items entails the City's review and analysis of appellate briefs in the underlying case. (Doc. 903-1, ¶¶ 4, 27). The City reasonably argues that this work was related to American Safety because it was undertaken to "evaluate whether the arguments [the City] was making were consistent with the City's pleadings in the underlying action, to consider the probability

of whether the $9,063,000.00 judgment may be reversed, to assess the allegations for purposes of determining what occurrences took place during [American Safety's] policy periods and to assess which of Dominguez's claims were ultimately decided by the jury so as to determine which policies owed defense and indemnification obligations to the City." (Doc. 974 at 5-6). Accordingly, the City's fee request as to these two items is reasonable. The second category of items entails work related to payment of the *Dominguez* judgment, namely the City's review and analysis of an ordinance to authorize bonds to satisfy the

judgment. (Doc. 903-1, ¶¶ 34-36). The City argues that this is relevant to American Safety because "the City had to demonstrate that the underlying judgment had been satisfied." (Doc. 974 at 7). But the specific work the City undertook to secure the funds to satisfy the underlying judgment goes above and beyond any obligation the City had in this case to establish that it had satisfied the judgment. The Court fails to see how the City's legal review of the ordinance is attributable to American Safety in this case, and the City cites no legal authority for such a proposition. Accordingly, for the three items related to the ordinance, the Court deducts $54 from the total amount requested by the City.

American Safety also objects to various miscellaneous items. It objects to two items for which the basis of the relevancy objection are not specified: (1) a January 23, 2008 entry for "telephone conference with [City attorney] D. Field re: status of Dominguez action; opening brief and coverage issues" and (2) a January 29, 2008 entry for "review policies of insurance for references to scope of liability and policy effectiveness when other policies' coverage could apply re American safety casualty [sic]." (Doc. 903-1, ¶¶ 5, 6; Doc. 816-1 at 46). In the absence of any specific objection by American Safety, the Court concludes that the time entries reasonably establish a link to American Safety's coverage and potential liability in this case. Next, for a challenged entry for deposition preparation, the City clarified that this pertains to the deposition of American Safety representative Bob D'Olympio. (*Id.*, ¶ 30). Accordingly this expense also is reasonable. American Safety objects as duplicative to a prorated entry concerning an internal meeting among City attorneys and attendance at a settlement conference in the district court (*id.*, ¶ 28); however, American Safety does not identify the entry or entries of which it may be duplicative, nor does it cite any authority for the proposition that attendance of more than

one attorney at a settlement conference is unreasonable. Finally, American Safety objects to three unprorated entries concerning discovery on the ground that it is unclear to which carrier this applies. (*Id.*, ¶¶ 29, 31, 32). But the City made clear that all entries unrelated to American Safety were redacted from the invoices (Doc. 816-1, Exh. 1, ¶ 13), so it is reasonable to assume that the discovery work described in these entries is related to American Safety even though the entries do not identify American Safety by name.

Accordingly, for the reasons described above, in addition to the $777 in fees that the City withdrew, the Court deducts a total of $5,546.19 from the City's requested fee award for work that is unrelated to American Safety.

### ii.    Prorating Objections

In Exhibit B to its response brief, American Safety enumerates 33 time entries to which it objects based on the ground that fees totaling $3,483 should be prorated to reflect American Safety's proportional share. In its reply, the City withdrew items totaling $413, but otherwise argued that the challenged time entries were accurately prorated. (Doc. 974 at 8-9, withdrawing 903-2, ¶¶ 7, 8, 25, 31, 32).

Analysis the City performed concerning the facts related to its declaratory judgment against American Safety was performed before the City moved for leave to add additional parties (Doc. 903-2, ¶ 1), and thus it is reasonable to attribute the full cost to American Safety. Additionally, the City asserts in reply that various entries concerning analysis and satisfaction of the underlying *Dominguez* case, discovery, initial disclosures, correspondence, depositions, and legal research entail work that the City would have had to perform even if other parties had not been added. (*Id.*, ¶¶ 2-6, 13-15, 18-19, 21-22, 26, 28-30). American Safety does not explain with any specificity the basis for its assertion

that such fees should be prorated, and the description of these entries is consistent with the City's position that the fees would have been incurred regardless of how many insurers were in the case. Accordingly, it is reasonable to attribute the full amount of these fees to American Safety.

The City provided a reasonable factual basis for attributing the full cost of other challenged entries to American Safety, namely that entries related to a scheduling order were the result of a motion to extend discovery filed by American Safety (*id.*, ¶¶ 10-12), and an entry concerning review and analysis of professional conduct rules pertains to American Safety's actions in issuing a subpoena to the City's third party administrator (*id.*, ¶ 27). (Doc. 974 at 8-9). The remaining seven time entries are for small fractions of time ranging from 0.1 to 0.5 hours, and consist of review of and correspondence concerning discovery, strategy analysis, and review of a court order. (Doc. 903-2, ¶¶ 9, 16-17, 20, 23-24, 33). Again, American Safety has failed to explain with specificity the basis for concluding that this work is not reasonably attributable to American Safety.

Accordingly, the Court finds reasonable the City's attribution of the full amount of the challenged time entries to American Safety, except the $413 in fees that the City withdrew, and declines to prorate the fees for those entries.

### c. Administrative Fee Objections

Finally, American Safety objects to certain fees for administrative tasks in the amount of $1,918.48. (Doc. 903 at 12). Specifically, American Safety argues that "[d]ownloading and electronically filing documents [] are tasks which have a lower billing rate than the $195-$225 per hour attorney rate and therefore appear to have been performed by a paralegal or secretary." (*Id.*). The City subsequently withdrew or prorated

certain items to reduce the amount sought by $818.15. (Doc. 974 at 9-10). The remaining eighteen items consist of in-house costs the City's law firm incurred for electronically filing documents with the court, downloading electronic documents from the court's filing system, preparing or delivering courtesy copies for the court, preparing and scanning exhibits, drafting a certificate of service and a waiver of summons, and docketing dates and deadlines. (Doc. 903-3, ¶¶ 1-13, 15-18, 31).

As a general matter, in-house overhead expenses, including in-house delivery and photocopying charges and paralegal and secretarial assistance, are not recoverable as litigation costs because they are fixed costs already reflected in an attorney's hourly rate. *Johnson v. Thomas*, 342 Ill.App.3d 382, 401-402, 794 N.E.2d 919, 934 (1st Dist. 2003); *Harris Trust & Sav. Bank v. Am. Nat. Bank & Trust Co.*, 230 Ill.App.3d 591, 599-600, 594 N.E.2d 1308, 1315 (1st Dist. 1992); *Kaiser*, 164 Ill.App.3d at 989, 518 N.E.2d at 431. The challenged costs consist of precisely the type of in-house overhead expenses the Illinois courts have declined to award pursuant to petitions for attorney's fees and costs. *See Johnson*, 342 Ill.App.3d at 401-402, 794 N.E.2d at 934-935; *Harris Trust & Sav. Bank*, 230 Ill.App.3d at 599-600, 594 N.E.2d at 1315; *Kaiser*, 164 Ill.App.3d at 989, 518 N.E.2d at 431. Thus, the City is not entitled to recover its costs for any of the administrative charges challenged by American Safety.

Accordingly, the Court deducts $1,918.48 in administrative charges from the fees requested by the City, and awards the City a total of $244,382.22 in attorneys' fees.

## 2. Legal Research Costs

The City also seeks to recover a total of $10,994.62 in electronic legal research costs. (Docs. 816, 874). The City's petition contains only a listing of dates and amounts

for "Legal Research Fees," with no further description. (Doc. 816-3). Thus, American Safety argued in response that the research costs should be denied in their entirety because the supporting documentation does not identify the subject matter of the research or the individual who performed it. (Doc. 903 at 12-13). In reply, the City submitted invoices from the research services provider, as well as a spreadsheet containing, among other information, the billing date, invoice number, amount billed, percentage and amount attributable to American Safety, and a description of the research performed on each date. (Doc. 974 at Exhs. 1 & 2).

The City is entitled to its electronic research costs. Under Illinois law, costs for computerized legal research are recoverable in matters such as this one, where the attorneys charged an hourly rate and where they are also entitled to recover their attorneys' fees. *See Johnson*, 342 Ill.App.3d at 402-403, 794 N.E.2d at 934-935. The City has cured the deficiency in its documentation by describing in sufficient detail the nature of the legal research performed on each date. American Safety cites no authority for its argument that the name of the person performing the research is required, and the Court is aware of no reason why this would be required to determine the reasonableness of the research costs, given that the amounts sought are for the
costs of the electronic research services, not the fees of the person performing the research. American Safety does not challenge the reasonableness of the amounts charged for the services or the prorated amounts allocated to American Safety.

Accordingly, the Court awards the City $10,994.62 in electronic legal research costs.

### 3.    Expert Fees

Finally, the City requests $10,191.01 in fees for Donald J. Brayer, an insurance expert retained for this declaratory action (Docs. 816 at 3, 816-3). The requested amount represents a 20% prorated share of Mr. Brayer's total fees. (Doc. 816-3). American Safety does not object to the City's expert fees, but the Court denies such fees since Illinois law does not allow for their recovery here.

The Illinois statute under which the City was authorized to file this fee petition specifies only that the court may award "reasonable attorney fees" and "other costs."[4] *See* 215 ILCS 5/155(1). The Illinois Supreme Court has held that in determining whether to award costs under a statute that does not define "costs," a court must make a distinction between "litigation costs," which are the expenses of litigation, and "court costs," which comprise expenses such as filing fees, subpoena fees, and statutory witness fees. *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill.2d 295, 302, 789 N.E.2d 290, 295 (2003). While court costs are commonly understood to be encompassed by statutes that do not define the term "costs," litigation costs, including expert fees, are not. *Id.* Accordingly, expert fees may be taxed as costs "only if authorized by another statute or by supreme court rule." *Id.* Thus, in *Vicencio* the Illinois Supreme Court reversed an award of professional fees for a non-party treating physician to attend an evidence deposition where the applicable statute did not define "costs" and no other statute or rule authorized taxing of such expert fees as costs. *Vicencio*, 204 Ill.2d 295, 302-311, 789 N.E.2d 290, 295-300. Similarly, relying on *Vicencio*, the appellate court in *TruServ Corp. v. Ernst & Young LLP*,

---

[4]      The statute also authorizes the court to award an additional penalty, which the district judge in her discretion elected not to impose in this case. (Doc. 811 at 52 n.11).

376 Ill.App.3d 218, 227, 876 N.E.2d 77, 85-86 (1st Dist. 2007), vacated an arbitration award granting expert witness fees to Ernst & Young as the prevailing party.

The statute at issue here, 215 ILCS 5/155, does not define the term "costs." In light of the rule the Illinois Supreme Court set forth in *Vicencio*, this Court construes the term to encompass only court costs, and not litigation costs, such as expert fees. The only case cited by the City, *Krislov v. Rednour*, 97 F.Supp.2d 862, 871 (N.D. Ill. 2000), is inapplicable here, because it is a federal case setting forth recoverable costs and fees under federal civil rights statutes.

Accordingly, the Court denies the City's request for expert witness fees.

## CONCLUSION

For the reasons stated above, the City of Waukegan is awarded $4,265.23 in costs and $255,376.84 in attorneys' fees and costs from American Safety Casualty Insurance Company, and $2,954.76 in costs from Interstate Indemnity Company.

ENTER:

Dated: December 20, 2011

_____
SHEILA FINNEGAN
United States Magistrate Judge