IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN SAFETY CASUALTY INSURANCE COMPANY,<br>    Plaintiff,<br>  v.<br>CITY OF WAUKEGAN,<br>    Defendant.<br>--------------------------------------------------------<br>CITY OF WAUKEGAN,<br>    Counter-Plaintiff,<br>  v.<br>AMERICAN SAFETY CASUALTY INSURANCE COMPANY, INTERSTATE INDEMNITY COMPANY, CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, NORTHFIELD INSURANCE COMPANIES, WESTPORT INSURANCE CORPORATION, EVANSTON INSURANCE COMPANY, S. ALEJANDRO DOMINGUEZ, AND PAUL HENDLEY,<br>    Counter-Defendants. | Case No. 07 C 1990<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

After Alejandro Dominguez won a judgment of over $9 million against the City of Waukegan ("the City" or "Waukegan") for violations of his civil rights, Waukegan sued its various insurers, asserting that they should have defended and/or indemnified the City in Dominguez's case. The Court will not review the tortured procedural history of this case in great detail; for present purposes it is sufficient to note that the Court previously found that two of the insurers, American Safety Casualty Insurance Company ("American Safety") and Interstate Indemnity Company

("Interstate") needed to indemnify the City in connection with the $11 million the City paid to satisfy its judgment. After the Court entered a very detailed final judgment order, the Court referred the various parties' bills of costs to the magistrate judge. The magistrate issued a careful and lengthy opinion denying the City's request for the over $3 million in interest and fees it incurred to issue a municipal bond to cover the Dominguez judgment, among other rulings.

The City has objected to only that ruling, asserting that it is entitled to the bond costs based on the policies issued by American Safety and Interstate and various procedural rules and statutes. None of the City's objections have merit, and the City's objections fundamentally misunderstand that its bond financing costs are not costs incurred in connection with prosecuting this suit to be recovered during the bill of costs process. Rather, the bond costs— if the City is in fact entitled to them—are properly considered to be damages the City incurred as the result of the insurers' decision not to indemnify the City. Because the bond costs are damages, the City should have sought them at summary judgment with proper evidence. The City's objections are overruled and the Court adopts the holdings of the magistrate's report and recommendation as noted below.

## DISCUSSION

All told, the City paid $11,397,195.39 to satisfy the Dominguez verdict; it pulled together those funds by issuing a municipal bond. The City paid $3,130,168.42 in interest and other costs in order to issue the municipal bond to satisfy the judgment, and now wants to recover that amount as "costs." In its objections, Waukegan asserts that it has not waived its right to seek bond financing costs, and that the bond costs should be considered awarded to the City per: (1) American Safety's and Interstate's policies; (2) § 155 of the Illinois Insurance Code; (3) Rule 54(d) and Federal Rule

of Appellate Procedure 39(e); (4) Local Rule 54.1(c); or (5) the Illinois Interest Act (815 ILCS 205/2). The Court addresses each of the City's contentions in turn.

A.  **City's Bond Financing Costs Are Damages, not Costs**

At bottom, the City's objections to the magistrate's recommendation reflect a misunderstanding of the nature of the bond financing costs it incurred. The bond costs for which the City seeks payment relate to a bond for satisfaction of judgment from the Dominguez suit, and were not incurred as part of the suit before this Court. According to the City, because the insurers refused to indemnify it, the City had to issue the bond in order to satisfy the judgment and incur the fees associated with that bond. The City then brought this suit in order to be recover its loss as a result of the Dominguez suit.

Because the bond financing costs relate to the prior suit, Waukegan should have sought them as damages in the present suit, and should not have waited until after judgment had been rendered to request compensation in the form of taxable costs. *See Sola v. Roselle Police Pension Bd.*, __ N.E.2d __, 2012 WL 34267 (Ill. App. 2d 2012) (final judgment is conclusive as to subsequent actions for same claim or damage). Without commenting on whether the City's efforts to recover the bond costs would have been successful, the Court notes that the bond costs are no different conceptually than the $1 million in attorney's fees that the City had to pay to defend the Dominguez suit. The City recovered those fees from American Safety as a consequence of American Safety's breach of the insurance contract, because had American Safety shown up and defended the suit, the City would not have needed to pay its own lawyers. (*See* Doc. 811 ("The City has shown that it incurred expense associated with American Safety's breach, namely the attorneys' fees and costs incurred to defend itself . . . .").) Similarly, and as the City conceded in its objections to the

3

magistrate's report, the City's position is that it only incurred these bond costs because its insurers improperly refused to indemnify the City and pay up. In short, Waukegan should have sought the bond costs as damages in this suit to be included in the judgment this Court has already issued.

The City suggests it made it clear it was seeking the bond financing fees throughout the suit. Per Waukegan's reply brief, the City knew it would finance paying the judgment, at the very latest, by April 2008 (Doc. 1020 at 5.) Consequently, Waukegan was well aware it would be using financing (and incurring costs) when it filed its summary judgment papers in March 2010, almost two years later. Even if the Court interpreted Waukegan's operative counterclaims against the insurers to be seeking the costs associated with the bond, the City's summary judgment papers mention *nothing* about seeking the bond financing costs. (*See* Docs. 458-59, 466-67.) Indeed, the City would have to demonstrate that the insurers' actions caused the City to incur the bond costs. Waukegan asserts in its briefing on its objections that the City could not pay the verdict out of its operating funds and had to issue the bonds, but Waukegan's Local Rule 56.1 statements contain no evidence whatsoever concerning the bond costs. Without such evidence, it is impossible to determine if the City had to issue a bond, or if the City had the money to pay the verdict without borrowing but chose financing for political or other reasons. Perhaps the City did not want the insurers prying into the City's finances or decision to issue the bond during discovery, and made a strategic decision to try to recover the bond costs post-judgment rather than part of the judgment. In any event, a bill of costs cannot be used to capture what should have been part of the judgment, and it would be too late now to present evidence that the insurers caused the City to incur the bond costs. *See Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (final judgment on appeal still has res judicata effect as to all claims that could have been brought).

4

Further, though Waukegan claims otherwise, its Rule 60 motion to amend the judgment filed on July 13, 2011 did not seek to add the bond costs to the judgment; that motion simply wanted the judgment to reflect the Court's ruling that American Safety had to pay the City's costs and fees to litigate *this coverage dispute* against American Safety. (*See* Docs. 889; 911; and 811 (finding American Safety acted "unreasonably and vexatiously" under § 155 of the Illinois Insurance Code).)[1] Finally, Waukegan claims that it did not need to include the bond costs as part of summary judgment because the issue was not "ripe" until it started incurring interest on the bonds after the Court entered its summary judgment. No matter when the interest started to accrue, the proper procedure for Waukegan was to seek declaratory judgment that the insurers were responsible for the financing costs and to support that request with admissible evidence, leaving the actual amount to be determined later.[2]

**B.      Other Authority for Awarding the Bond Costs as "Costs"**

   **1.      Section 155 of the Illinois Insurance Code**

Waukegan asserts that the magistrate's report did not take into account Waukegan's assertion that the Court may award the bond costs under Section 155 of the Illinois Insurance Code, which states in relevant part that "the court *may* allow as part of the taxable costs in the action reasonable attorney fees, [and] other costs . . . ." 215 ILCS 5/155 (emphasis added). Awarding costs under §

---

[1] Waukegan never filed a motion asserting the Court was incorrect when the Court reiterated on July 6, 2011that "the City's loss was the $11,397,195.39 it paid to satisfy the Dominguez judgment." (Doc. 884 at 2.)

[2] Given that Waukegan should have raised the bond financing costs issue at summary judgment, Waukegan's argument that American Safety's and Interstate's policies require them to pay the bond costs now is beside the point. As an aside, the Court notes that the policy language identified by the City does not support the City's position. American Safety's policy requires American Safety to pay "[a]ll costs taxed against the 'Insured' in the 'Suit,'" as well as interest on "the judgment," subject to restrictions. The bond costs were not taxed against the City in the suit, and they were not interest on the judgment. Rather, they were costs incurred by Waukegan because of the method Waukegan used to pay the judgment. Similarly, Interstate's policy, which requires Interstate to pay interest "on a judgment," would not cover bond costs, because the bond costs are not interest on a judgment.

155 is discretionary after considering the totality of the circumstances. *See Williams v. Am. Country Ins. Co.*, 833 N.E.2d 971, 982 (Ill. App. Ct. 2005). Waukegan provides no authority suggesting that bond costs are properly considered to be "costs" available under 215 ILCS 5/155, and in any event, the Court's analysis above dictates that the bond costs are damages, not costs to bring the suit. *See Calcagno v. Personalcare Health Mgt., Inc.*, 565 N.E.2d 1330, 1336 (Ill. App. Ct. 1991) (discussing § 155 and noting that the "term 'costs' ordinarily refers to the expense of prosecuting or defending an action, excluding attorney fees.")

### 2. Rule 54(d), Federal Rule of Appellate Procedure 39(e) and Local Rule 54.1(c)

The Court adopts the magistrate's reasoning with respect to the City's objections that the bond costs should be awarded to the City under Rule 54(d) and Federal Rule of Appellate Procedure 39(e). As the magistrate noted, the bond costs are not "costs" Waukegan incurred to prosecute the suit and are not recoverable post-judgment under Rule 54(d). *See* 28 U.S.C. § 1920 (listing "costs" as items like filing fees, copying charges and court reporter fees, and not including bond costs); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007) (finding that 28 U.S.C. § 1920 lists the type of costs taxable under Rule 54(d)). Federal Rule of Appellate Procedure 39(e) allows the district court to tax as costs "premium paid for a supersedeas bond or other bond to preserve rights pending appeal." As the magistrate found, the municipal bond at issue here was not a supersedeas bond secured by the City to preserve its appeal rights. Similarly, the magistrate correctly found that the City could not recover the bond costs under Local Rule 54.1(c). "A district court may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Id.* at 447 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 441-43 (1987)). Section 1920 does not authorize bond costs as a permissible category of costs to be taxed, and Local Rule 54.1(c)

6

cannot expand categories of allowable damages. *Republic Tobacco*, 481 F.3d at 447; see also In re Griffin Trading Co., 424 B.R. 431, 432-33 (N.D. Ill. 2010) (interpreting the bankruptcy court's version of Local Rule 54.1(c) and finding that, under *Republic Tobacco* and *Crawford*, the local rule does not expand the categories of allowable costs).[3]

## CONCLUSION

For the foregoing reasons, the Court adopts the magistrate's recommendations (Doc. 1001) and overrules Waukegan's objections.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 19, 2012

---

[3]The City did not properly raise the issue of whether the bond costs are available under the Illinois Interest Act (815 ILCS 205/2) before the magistrate and has waived any argument under that statute. *See United States v,. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (arguments not properly made before magistrate are waived).

7